# IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS HOUSTON DIVISION

| | | |
|---|---|---|
| TEX CHRISTOPHER, in his capacity as a community leader, TRACY SHANNON, Mass Resistance Houston Division, PASTOR CALVIN MILLER, founder of 1 Team 1 Fight Ministries, LT MARK CHRISTOPHER SEVIER, De Facto Attorney Generals and Special Forces Of Liberty,<br><br>V.<br><br>RHEA LAWSON, Ph.D., Executive Director Of The Houston Public Library, SYLVESTER TURNER, in his official capacity as Mayor of Houston *Defendants* | | Case No: 4:18-cv-03943<br><br>Before Honorable Chief Judge Rothenthal<br><br>OCT 2 2 2018<br>David J. Bradley, Clerk of Court |

## MEMORANDUM IN SUPPORT OF THE EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER OR PRELIMINARY INJUNCTION BY PLAINTIFF TEX CHRISTOPHER JOINED BY PLAINTIFF SEVIER

https://www.wnd.com/2018/10/sued-drag-queen-story-hour/

https://www.chron.com/news/houston-texas/houston/article/Houston-library-sued-by-anti-gay-activists-over-13322045.php

https://conservativefiringline.com/houston-library-sued-for-proselytizing-secular-humanism-to-minors-through-a-drag-queen-story-hour/

http://www.nydailynews.com/news/national/ny-news-drag-queen-story-hour-20181020-story.html

https://thehill.com/blogs/blog-briefing-room/news/412456-group-sues-houston-public-library-over-drag-queen-story-hour

ORAL ARGUMENT REQUESTED ON OCTOBER 25th OR 26th Set

# TABLE OF CONTENTS

I.  JUST LIKE WITH THE MARRIAGE AND CONSTITUTION RESTORATION ACT THE PLAINTIFFS SEEK TO BALANCE THE FREE EXERCISE CLAUSE WITH THE ESTABLISHMENT CLAUSE
.............................................................................................................................2

II. FACTUAL STATEMENT
.............................................................................................................................6

III. STANDING
.............................................................................................................................8

IV. PLAINTIFFS ARE ENTITLED TO A PRELIMINARY INJUNCTION
...........................................................................................................................13

A. Applicable Legal Standard
...........................................................................................................................13

B. Applicable Legal Standard Applied to the Case At Bar
...........................................................................................................................15

1. There is Substantial Likelihood That The Plaintiffs Will Prevail On The Merits
...........................................................................................................................15

2. Plaintiffs Will Suffer Irreparable Harm If the Injunction Is Not Granted
...........................................................................................................................21

3. The Threatened Harm to Plaintiff Will Outweigh the Threatened Harm to Defendant If the Injunction is Not Granted
...........................................................................................................................23

4. Granting the Injunction Will Not Disserve the Public Interest
...........................................................................................................................24

IV. CONCLUSION
...........................................................................................................................25

## Table Of Cases

*Agostini v. Felton,*
521 U.S. 203 (1997)
.........................................................................................................................2, 7

*Armbruster v. Cavanaugh,*
140 Fed. Appx. 564 (3rd Cir. 2011)
.............................................................................................................................3

*Baker v. Carr,*
369 U.S. 186, 204 (1962)
.............................................................................................................................9

*Blue Bell Bio Medical v. Cz.n-Bad, Inc.,*
 864 F.2d 1253 (5th Cir. 1989)
...........................................................................................................................13

*Bookcase, Inc. v. Broderick,*
18 N.Y.2d 71, 271 N.Y.S.2d 947, 218 N.E.2d 668 (1966)
.............................................................................................................................6

*Bord of Educ, of Kiryas Joel Vill. Sch. Dist.v. Grumet,*

512 U.S. 687, 696 (1994)
.................................................................................................................7
*Bowen v. Kendrick*,
487 U.S. 589 (1988)
.............................................................................................................8, 10
*Bowers v. Hardwick*,
478 U.S. 186 (1986)
...............................................................................................................17
*Canal Authority of State of Florida v. Callaw,*
499 F.2d 567 (5tb Cir. 1974)
...............................................................................................................15
*Cantwell v. Connecticut,*
310 U.S. 296, 303, 60 S.Ct. 900,  84 L.Ed. 1213 (1940)
...............................................................................................................15
*Chapin v. Town of Southampton*,
457 F. Supp. 1170 (E.D.N.Y. 1978)
.................................................................................................................6
*Church of the Holy Trinity v. United States,*
 143 U.S. 457 (1892)
.................................................................................................................2
*City of Los Angeles v. Alameda Books*, Inc.
535 U.S. 425, 122 S. Ct. 1728, 152 L. Ed. 2d 670 (2002)
.................................................................................................................8
*City of Portland v. Jacobsky,*
496 A.2d 646 (Me. 1985)
.................................................................................................................6
*Comm. for Public Ed. & Religious Liberty v. Nyquist,*
413 U.S. 756 (1973)
...............................................................................................................10
*Court v. State,*
51 Wis. 2d 683, 188 N.W.2d 475 (1971) 413 U.S. 911, 93 S. Ct. 3032, 37 L. Ed. 2d 1023 (1973)
.................................................................................................................5
*County of Allegheny v. ACLU*, 492 U.S. 573, 589-94, 109 S.Ct. 3086, 106 L.Ed.2d 472 (1989)
.................................................................................................................6
*Deerfielded Med Ctr. v, City of Deerfield Beach*,
661 F.2d 328, 338 (5th Cir. 1981)
...............................................................................................................22
*DSC Communications Corp., v, DGl Technologies, Inc.*,
81 F.2d 597, 600 (1996)
...............................................................................................................15
*Ebert v. Maryland State Bd. of Censors,*
19 Md. App. 300, 313 A.2d 536 (1973)
.................................................................................................................5
*Edwards v. Aguillard,*
482 U.S. 578 (1987)

........................................................................................................................1, 2, 14
*Elrod v. Burns,*
427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976)
..........................................................................................................................................22
*Entm 't Software Ass 'n v. Foll,*
451 F. Supp. 2d 823 (M-D. La, 2006)
..........................................................................................................................................24
*Entertainment Software Ass ,n. v, Foll,*
451 F.Supp. 823 (M.D.La. 2006)
..........................................................................................................................................21
*Everson v. Bd of Edu*c.,
330 U.S. 1, 67 S.Ct. 504, 91 L.Ed 711 (1947)
..........................................................................................................................................15
*Flast v. Cohen,*
392 U.S. 83 (1968)
.............................................................................................................................................8
*Friends of the Earth, Inc, v. Laidlaw Envtl, Serv.,*
528 U.S. 167 (2000)
...................................................................................................................................10, 12
*Forum for Academic & lust, Rights v. Rumsfeld,*
390 F.3d 219 (3rd Cir. 2004)
...................................................................................................................................22, 24
*Ginsberg v. New York,*
390 U.S. 629, 88 S. Ct. 1274, 20 L. Ed. 2d 195 (1968)
.............................................................................................................................................6
*G&V Lounge, Inc, v. Mich. Liquor Control Comm'n,*
23 F.3d 1071 (6th Cir. 1994)
..........................................................................................................................................24
*Hibbs v. Winn,*
542 U.S. 88 (2004)
..........................................................................................................................................10
*Hunt v. McNair,*
413 U.S. 734 (1973)
...................................................................................................................................10, 11
*Hein v. Freedom From Religion Foundatio*n,
551 U.S. 587 (2007)
..........................................................................................................................................15
*Holloman v. Harland,*
370 F.3 1252 (11th Cir. 2004)
..........................................................................................................................................18
*Berger v, Berger v. Rensselaer Cent. Sch Corp.,*
766 F.Supp. 696, 982 F.2d 1160 (7th Cir. 1993)
..........................................................................................................................................12
*Jacobellis v. Ohio,*
378 U.S. 184 (1964)

..................................................................................................................................5

*Jagar v. Douglas County School*,
862 F.2d 824 (11th Cir.1989)
.................................................................................................................................19

*Janvey v. Alguire*,
647 F.3d 585 (5th Cir. 2011
.................................................................................................................................11

*Johnson v, Radford*,
449 F.2d 115 (5th Cir. 1971)
.................................................................................................................................12

*Killebrew v. City of Greenwood*,
988 F. Supp. 1014 (N.D. Miss. 1997)
.................................................................................................................................22

*Lawrence v. Texas*,
539 U.S. 558 (2003)
.................................................................................................................................17

*Lee v. Weissman*,
505 U.S. 577, 112 S.Ct. 2649, 120 L.Ed.2d 467 (1992)
.......................................................................................................................6, 14, 23

*Lemon v. Kurtzman*,
403 U.S. 602 (1971)
...............................................................................................................................2, 20

*Levitt v. Comm. for Pub. Educ. & Religious Liberty*,
413 U.S. 472 (1973)
...................................................................................................................................7

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)
...................................................................................................................................9

*McCreary County v. ACLU of Kentucky*,
545 U.S. 844, 860 (2005)
....................................................................................................................15, 19, 20, 21

*Morgan v. Fletcher*,
518 F.2d 236 (5th Cir. 1975)
.................................................................................................................................13

*Massachusetts v. EP.A,,*
127 S.Ct. 1438 (2007)
.................................................................................................................................12

*Meis v. Sanitas Serv. Corp.*,
511 F.2d 655 (5th Cir. 1975)
.............................................................................................................................10, 11

*Miller v. California*,
413 U.S. 15 (1973)
...................................................................................................................................5

*Mishkin v. State of New York*,
383 U.S. 502, 86 S. Ct. 958, 16 L. Ed. 2d 56 (1966)
...................................................................................................................................6

*Mueller v. Allen,*
463 U.S. 388 (1983)
..................................................................................................................10

*Murillo v. Musegades,*
809 F. Supp. 487 (W.D. Tex. 1992)
..................................................................................................................22

*Murray v. City of Austin,*
947 F.2d 147 (5th Cir. 1999)
...................................................................................................................9

*New Orleans Secular Humanist Ass Inc, v. Bridges,*
2006 WL 1005008 (E.D. La. Apr. 17, 2006)
..................................................................................................................24

*North Carolina Civil Liberties v. Constangy,*
751 F,Supp. 552, 947 F.2d 1145, 505 U.S. 1219, 112 S.Ct. 3027, 120 L.Ed.2d 898 (1992)
..............................................................................................................11, 12

*Obergefell v. Hodges,*
135 S.Ct. 2584 (2015)
..............................................................................................................14, 17

*Ortega v. Recreation & Parks Comm'n for Par. of E. Baton Rouge,*
2018 WL 3471890 (La. App. 1 Cir. 7/18/18)
..................................................................................................................11

*Paris Adult Theatre I v. Slaton,*
413 US 49 (1973)
...................................................................................................................5

*Planned Parenthood of Southeastern Pa. v. Casey,*
505 U.S. 833 (1992)
...................................................................................................................2

*Real Alternatives, Inc. v. Sec'y Dep't of Health & Human Servs.,* 150 F. Supp. 3d 419,, 2017
WL3324690 (3d Cir. Aug. 4, 2017)
...................................................................................................................2

*Saladin v, City of Milledgeville,*
812 F.2d 687 (11th Cir. 1987)
...................................................................................................................9

*Shapiro v. Thompson,*
394 U.S. 618 (1969)
..................................................................................................................10

*Schlegel v. United States,*
416 F.2d 1372, 1378 (Ct. Cl.1969)
...................................................................................................................6

*Schenck v. United States,*
249 U.S. 47 (1919)
...................................................................................................................5

*Sierra Club v, Morton,*
404 U.S. 727 (1972)
..................................................................................................................11

*Springtree Apartments, ALPIC v. Livingston Parish Council,*
207 F, Supp. 2d 507 (M.D. La. 2001)
.........................................................................................................................22
*Sovereign News Co. v. Falke,*
448 F. Supp. 306 (N.D. Ohio 1977)
..........................................................................................................................6
*Staley v. Harris Cty,*
332 F. Supp. 2d 1030, 485 F.3d 305 (5th Cir. 2007)
.....................................................................................................................10, 17
*State v. Petrone,*
161 Wis. 2d 530, 468 N.W.2d 676 (1991)
..........................................................................................................................5
*Suhre v. Hood Cty.,*
131 F.3d 1083 (4tb Cir. 1977)
..........................................................................................................................9
*Texas Monthly, Inc. v. Bullock,*
489 U.S. 1 (1989)
.....................................................................................................................10, 11
*Torcaso v. Watkins,*
367 U.S. 488 (1961)
..........................................................................................................................1
*United Food & Commercial Workers Union, Local 1099 v. Sw. Ohio Reg 7 Transit Auth,,*
163 F.3d 341 (6th Cir. 1988)
.........................................................................................................................22
*United States v. American Library Assn., Inc,*
539 U. S 194 (2003)
..........................................................................................................................8
*United States v. Gendron,*
2009 WL 5909127 (E.D. Mo. Sept. 16, 2009)
..........................................................................................................................6
*Valley v. Rapides Parish School Board,*
118 F.3d 1047 (5th Cir. 1997)
.........................................................................................................................24
*Van Orden v, Perry,*
545 U.S. 677 (2005)
.............................................................................................................15, 18, 21
*Walz v. Tax Comm. of the City of New York,*
397 U.S. 664 (1970)
.........................................................................................................................10
*Washington Ethical Society v. District of Columbia,*
101 U.S. App. D.C. 371, 249 F.2d 127 (1957)
..........................................................................................................................1
*Wiggins v, Stone,*
570 F. Supp. 1451, 1453 (M.D. La. 1983)
.........................................................................................................................22

*Welsh v. U.S,*
1970398 U.S. 333 (U.S. Cal. June 15)
…………………………………………………………………………………………………..1
*Weaver v, City of New Orleans,*
267 F. Supp. 2d 559 (E.D. La., 2003)
…………………………………………………………………………………………………24
*Wexler v, City of New Orleans,*
267 F. 2d 559 (E.D. La. 2003)
…………………………………………………………………………………………..22, 24

**Other Authority**
2 Encyclopaedia of the Social Sciences, 293
…………………………………………………………………………………………………..1
J. Archer, Faiths Men Live By 120—138, 254—313 (2d ed. revised by Purinton 1958)
…………………………………………………………………………………………………..1
Stokes & Pfeffer, supra, n. 3, at 560.
…………………………………………………………………………………………………..1
(UCMJ) 809. ART. 90 (20)
…………………………………………………………………………………………………..3
Tex. Penal Code § 43.24
……………………………………………………………………………………………6, 8, 21
Rule 65, Fed. R. Civ. P
…………………………………………………………………………………………………13

MAY IT PLEASE THE COURT: Plaintiff Tex Christopher, a community leader who compelled

the City Council to ban robot brothels[1] and who lead the charge to defeat the HERO ordinance,[2]

joined by Chris Sevier Esq., a former Judge Advocate General, moves for an emergency

temporary restraining order FRCP 65 et. seq to enjoin the Mayor and the Public Library from

displaying the Drag Queen Story Hour for Children at the Public Library or from partnering with

the any non-secular organization to sponsor the Drag Queen Story Hour in a public building.

This case presents itself as an emergency pursuant to Chamber Rule 14(A) and the requirements

of FRCP 65 have been met.[3]  Pursuant to Chamber Rule 6, oral argument is requested and the

Plaintiffs ask that the Court set oral argument for October 25th or October 26th at the Court's

discretion. The requirements of Rule 65(b) has been satisfied.[4]  The Library is scheduled to have

a Drag Queen Story Hour on October 27, 2018 and that event must not go forward. There has

been a litany of well documented violent threats made by the intolerant LGBTQ church against

would be protesters.  On October 16, 2018, at oral argument on a motion for a temporary

restraining order in *Guidry et. al. v. Elberson et. al.*, 6:18-cv-01232-RRS-PJH (W.D. L.A. 2018)

in a similar case before the Honorable Judge Summerhays and Magistrate Hanna, the Library

agreed to be restrained and"stand down," canceling its affiliation with Drag Queen Story Hour

---

[1] https://www.fox26houston.com/news/363557193-video

[2] https://abc13.com/news/bathroom-policy-draws-all-protesters-to-target/1317992/

[3] . Emergencies A. Applications for restraining orders or for other immediate relief are to be filed and a copy emailed to the case manager. Counsel must inform the case manager if the opposing party has been contacted and whether and when all parties can be available for a conference before the court. The court will not consider ex parte applications for restraining orders unless the requirements of Rule 65(b) of the Federal Rules of Civil Procedures have been satisfied.

[4] Other Motions For other disputes, including most dispositive motions, and when formal motions and briefs are needed, the court generally follows the written motion practice described in the Local Rules. The court will consider the motion and response after the submission date. A party requesting oral argument or a hearing on a motion must do so in writing and explain why it would be helpful. The case manager will notify counsel if the court sets a date for oral argument or other hearing.

for the "duration of [the] lawsuit."[5] Id. See DE 94.  The Plaintiffs simply ask that this Honorable

Court issue an order enjoining the Houston Library from hosting and sponsoring the Drag Queen

Story Hour for the "duration of the lawsuit."

The United States Supreme Court has recognized that Secular Humanism is a religion.[6]

The evidence presented in this case through the sworn statements of ex-gays, medical

professionals, licensed ministers, and persecuted Christians shows that sexual orientation and

homosexual orthodoxy that will be sermonized at the Drag Queen Story Hour to 2 to 10 year

olds that the Public Library has endorsed is inseparably linked to the religion of Secular

Humanism.[7]  In view of *Real Alternatives, In c. v. Burwell,* the organizations that the Library has

partnered with to put on the event are  non-secular because they are (1) full, (2) organized, and

(3) have a daily code by which members may guide their lives.[8]  Through their partnership these

---

[5]"Through counsel for Teresa Elberson, in her capacity as the librarian of Lafayette Public Library, the library voluntarily agreed to stand down on planning a Drag Queen Story Hour for the duration of this lawsuit."

[6]   See *Torcaso v. Watkins,* 367 U.S. 488, n. 11 (1961) and re-acknowledged in *Edwards v. Aguillard*, 482 U.S. 578 (1987).  See also *Washington Ethical Society v. District of Columbi*a, 101 U.S. App. D.C. 371, 249 F.2d 127 (1957); 2 Encyclopaedia of the Social Sciences, 293; J. Archer, Faiths Men Live By 120—138, 254—313 (2d ed. revised by Purinton 1958); Stokes & Pfeffer, supra, n. 3, at 560. *Welsh v. U.S*, 1970398 U.S. 333 (U.S. Cal. June 15).The Texas State legislature and a majority of states will be introducing a resolution that resolves the Secular Humanism is a religion for the purposes of the Establishment Clause at the 2019 legislative session. "Secular Humanism" is also commonly referred to by religious scholars as "postmodern western individualistic moral relativism and expressive."

[7] (DE 7 Lisa Boucher ¶¶ 1-10; DE 17 Quinlan ¶¶ 1-37; DE 14 Pastor Cothran ¶¶ 1-50; DE 16 Dr. King ¶¶ 1-20; DE 15 Dr. Cretella ¶¶ 1-20; DE 10 Goodspeed ¶¶ 1-20; DE 9 Grace Harley ¶¶ 1-25; DE _Kohl ¶¶ 1-12; DE 12 Pastor Cuozzo;  ¶¶ 1-21; DE 13 Pastor Farr ¶¶ 1-33; DE 18 Pastor Penkoski ¶¶ 1-34; DE 11 Pastor Cairns ¶¶ 1-30;; DE 8 Christian Resistance ¶¶ 1-21; DE _ Special Forces Of Liberty ¶¶ 1-34).  The ALA's policies amount to a Secular Humanist manifesto that are not secular. For example, section B.3.3 Combating Prejudice, Stereotyping, and Discrimination (Old Number 60.3) of the ALA's policy guidelines states:"The American Library Association actively commits its programs and resources to those efforts that combat prejudice, stereotyping, and discrimination against individuals and groups in the library profession and in library user populations on the basis of race, age, sex, sexual orientation, gender identity, gender expression, creed, color, religious background, national origin, language of origin or disability. Nothing in the Resolution on Prejudice, Stereotyping, and Discrimination authorizes censoring, expurgation, or restrictive labeling of materials. Actions and programs to raise the awareness of library users to any problem or condition would not be in conflict with the Library Bill of Rights when they are free of any element of advocacy. Both documents respect the rights of all who use libraries to do so freely and without being subjected to pressure or censorship from within the institution. See ALA Policy Manual Section B, Page 22 The "resources" that the Houston Library is "commiting" are taxpayer funded.

[8] *Real Alternatives, In c. v. Burwell*,  150 F. Supp. 3d 419, 440–41 (M.D. Pa. 2015), aff'd sub nom. *Real Alternatives, Inc. v. Sec'y Dep't of Health & Human Servs.*, No.16-1275, 2017 WL3324690 (3d Cir. Aug. 4, 2017).

non-secular LGBTQ organizations, the Library has failed the *Lemon* Test and, therefore, violated

the Constitution. See *Lemon v. Kurtzman*, 403 U.S. 602 (1971).[9] This lawsuit does not pit

Christianity against Secular Humanism.[10] This is simple case about whether the Library's

---

In *Real Alternatives,* the court stated: "We detect a difference in the "philosophical views" espoused by [the plaintiffs], and the "secular moral system[s]...equivalent to religion except for non-belief in God" that Judge Easterbrook describes in *Center for Inquiry,* 758 F.3d at 873. There, the Seventh Circuit references organized groups of people who subscribe to belief systems such as Atheism, Shintoism, Janism, Buddhism, and secular humanism, all of which "are situated similarly to religions in everything except belief in a deity." *Id.* at 872. These systems are organized, full, and provide a comprehensive code by which individuals may guide their daily activities. The LGBTQ organizations that the Library is partnering with are "organized, full, and provide a comprehensive code by which [ members can guide their daily lives.]. Instead of having a cross or the ten commandments, the LGBTQ church has the gay pride flag and their own commandments, such as if you disagree with LGBTQ ideology you are a bigot worth marginalizing. The unproven naked truth claims evangelized by the LGBTQ church such as (1) there is a gay gene, that (2) people can be born in the wrong body, that (3) same-sex sexual activity checks out with the human design, that (4) same-sex buggery is not immoral, and that (5) people come out of the closest baptized gay consists of a series of unproven faith based assumptions that are hyper religious and take a huge amount of faith to believe are even real, since these truth claims buck common sense and are more likely than not shallow qualifiers hoping to justify immoral sexual conduct that is indecent, immoral, and questionably legal.

[9] "To pass muster under the Establishment Clause, a practice must satisfy the *Lemon* test, pursuant to which it must: (1) have a valid secular purpose; (2) not have the effect of advancing, endorsing, or inhibiting religion;13 and (3) not foster excessive entanglement with religion." See *Lemon v. Kurtzman*, 403 U.S. 602 (1971). Government action "violates the Establishment Clause if it fails to satisfy any of these prongs." *Edwards,* 482 U.S. at 583; *Agostini v. Felton,* 521 U.S. 203, 218 (1997). The Library's actions taken in its partnership with Lambda Delta Phi has caused it to violate all three prongs of *Lemon.* The Library's decision to host and endorse Drag Queen Story Hour for 3 to 6 years olds in a manner that violates its own policies makes the event (1) a non-secular sham that (2) has the effect of cultivating indefensible legal weapons against non-observers of the religion of Secular Humanism and that (3) has the effect of excessively entangling the government with the religion of Secular Humanism.

[10] Without faith, there is "no basis for morality," and "without morality," there is "no basis for law." There is no way around that axiom. For anyone to say that "no one doctrine on morality is superior" is a "doctrine on morality" that asserts itself as "superior." In his letters from a Birmingham jail, Dr. King wrote that the reason he knew that a law was unjust was because it violated a "higher law" or a "divine law." He was right. If Military Officers, like Plaintiff Sevier can disobey an unlawful order from all the way up to the President, then it is a waste of time for any government body to pretend that moral judgments do not count. They do. (UCMJ) 809. ART. 90 (20); *Armbruster v. Cavanaugh*, 140 Fed. Appx. 564 (3rd Cir. 2011). So the question is which set of moral doctrine can the government used to create policy so that it does not erode freedom and offend the Constitution? The answer is self-evident morality that does not buck common sense, is non-controversial, and that is transcultural. If self-evident morality as a basis for law happens to parallels institutionalize religions, like Christianity, that does not make the policies unconstitutional. This lawsuit does not pit Christianity against Secular Humanism. The United States Supreme Court found that "America is a Christian Nation" in *Church of the Holy Trinity v. United States*, 143 U.S. 457 (1892). However, the Supreme Court also found that "America is a [Secular Humanist] nation" in *Planned Parenthood of Southeastern Pa. v. Casey,* 505 U.S. 833, 847 (1992), when Justice Kennedy stated "at the heart of liberty "at the heart of liberty is the right to define one's own concept of existence, of meaning, of the universe." Justice Kennedy's proverb means "Jedem das Seine," which is German for "to each his own" which is exactly what the sign over Buchenwald concentration camp read. So, "America is [not necessarily] a Christian Nation and "America is certainly not a [Secular Humanist] Nation." At best, it could be declared that "America is [unofficially] a Christian Nation" insofar as the laws of the United States are required to be predicated off of self-evident morality, which is natural, neutral, and non-controversial. The laws of the United States often parallel Christianity is apparently by coincidence, since Christianity is also based on a radically transformative self-evident truth and perhaps the master

decision to partner with non-secular organizations to endorse and sponsor the Drag Queen Story

Hour for minors in a non-designated public forum in violation of the Library's own guidelines

violates the Establishment Clause of the First Amendment of the United States Constitution.

Despite what the Houston Cronicle pretends, this is not an "anti-gay" lawsuit per se. The

Plaintiffs stipulate that adult citizens of Texas have the right under the Free Exercise Clause to

self-identity as homosexual or transgender.[11]

In terms of an Establishment Clause analysis in this case, the ALA and the other

organization seeking to unleash the Drag Queen Story Hour display exhibition in partnership the

Public Library are guilty of racketeering in a non-secular sham that lacks a primary secular

purpose. The notion that the Drag Queen Story Hour has anything to do with "diversity" and

"tolerance" is a flat out lie.[12] The target audience of the exhibition involves children and the goal

---

narrative of it. However, America must never mandate Christianity because it would create the very legalism that Christ himself was so adamantly opposed to and violate the Establishment Clause. A religion based on works-based righteousness is bad as religions based on moral relativism because pride is at the center of both. Religions must stand on their own merit without the government's stamp of approval. That is what the Constitution requires. The evidence shows that the reason why the LGBTQ church and Democrats continually push to have the government endorse their ideology is because it is so implausible and subversive to human flourishing that without the government's affirmation, the worldview would collapse in on itself under the weight of its own absurdity. The same cannot be said of Christianity, which continues to grow and expand, cutting through time and space in a manner that is transcultural. Yet, this lawsuit is not about asking government to impose Christianity on anyone. This is not a lawsuit where the Plaintiffs are suggesting that they are "morally superior" because they have decided to become Christ Followers as the result of robust thought, observation, and study.

[11] Gabrielle Banks, a talented reporter for the Houston Chronicle and devout Secular Humanist, was respectfully incorrect in labeling this as an "anti-gay action." This action is not "anti-gay" because the Plaintiffs have repeatedly stipulated that under the Free Exercise Clause of the First Amendment of the United States, anyone in the State of Texas may (1) self-identify as anything they would like to include homosexual, zoophile, wizard, polygamists, transgender, an objectophile etc, they can (2) conduct parody wedding ceremony, and they can (3) live as married people do for better or worse. This action concerns the Library's actions. Any parent could have a Drag Queen Story Time birthday party at their home and such an event would not violate the Establishment Clause, although it might likely violate Tex. Penal Code § 43.24, but that would be a matter for the District Attorney's office to decide.The Free Exercise Clause likely permits self-identified homosexuals and transgender to have a public meeting in a designated public forum within the Library to discuss the plausibility of homosexual lifestyle and ideology with other adults. The Free Exercise Clause permits the Library to partner with secular organizations that have a primary secular purpose that is neutral, natural, and non-controversial.

[12] In response to public outrage at the Library, the Library issued the following dishonest response. "Throughout their history, American public libraries have been on the front lines of promoting inclusivity and dispelling intolerance. The Houston Public Library is committed to celebrating the diverse and culturally rich

is indoctrination. Just like with Human Traffickers, the mission is to "recruit them while they are young." The objective of the Drag Queen Story Hour is to unequivocally promote a faith-based worldview of sex, faith, morality, marriage, and gender with the government's stamp of approval that is predicated on a series of unproven faith-based assumptions and naked assertions that are implicitly religious and inseparably linked to the religion of Secular Humanism. The organizations that seek to display Drag Queen Story Time exhibition might be as sincere in their beliefs that the exhibition is moral just as many jihadist suicide bombers are about their beliefs that Drag Queen Story Hour is an immoral abomination, as set forth in to Quran. Sincerity of belief is irrelevant. In view of the fact that the Library was served with a compelling Petition by Dr. Steven Hotze of Campaign for Houston[13] and litany of complaints by pastors and concerned parents like  Hispanic community leader, Cesar Franco,[14] these complaints are direct evidence that the event violates community standards of decency from an objective viewpoint.[15] The State has a compelling interest to uphold community standards of decency, and it is upon that legal basis that the Mayor - himself - could have permanently shut down the event with impunity. *Paris Adult Theatre I v. Slaton*, 413 US 49 (1973). In view of the totality of the circumstances, the speech that is expected to be preached at the Drag Queen Story Hour is not only "religious speech," it qualifies as unprotected obscene speech that is harmful to minors.[16]

---

communities here in Houston through the broad array of programs and resources we offer. All our programs are free, open to the public, and accessible by choice." That response is a sham and midirection. The Library's goal is indoctrination of minors to a specific spiritual take on reality.
[13]https://crtxnews.com/petition-to-the-houston-city-council-stop-drag-queen-storytime-at-the-houston-public-libraries/
[14] https://abc13.com/society/protesters-gather-during-librarys-drag-queen-story-time-event/4370849/
[15] *Miller v. California*, 413 U.S. 15 (1973);; *Jacobellis v. Ohio*, 378 U.S. 184 (1964), the Court stated, "I shall not today attempt further to define the kinds of material I understand to be embraced within that shorthand description [sexual immorality], and perhaps I could never succeed in intelligibly doing so. But I know it when I see it."
[16]  Just as a call by an Islamic Iman for immediate acts of violence through jihad is "religious speech," it also constitutes dangerous unprotected harmful speech. See *Schenck v. United States*, 249 U.S. 47 (1919) (shouting "fire" in a movie theater is not protected speech for purposes of the First Amendment). "Obscenity is not within the area of protected speech or press." *Court v. State*, 51 Wis. 2d 683, 188 N.W.2d 475 (1971) vacated, 413 U.S. 911, 93 S. Ct.

The entire exhibition serves to expose children to "sexual immorality" and is unlawful under

Tex. Penal Code § 43.24.[17]  The Court should issue an injunction because the speech is not

merely "religious speech," it is also harmful unprotected obscene speech that is injurious to

minors.[18]

## II. FACTUAL STATEMENT

The organizations that the Library has partnered with to put on a sectarian exhibition at the

Public Library for children in a non-designated public forum in violation of its own policies is

non-secular and the partnership conveys that the Library favors the religion of Secular

Humanism over non-religion and other religions.[19]  Because the Plaintiffs have objected to the

---

3032, 37 L. Ed. 2d 1023 (1973) and abrogated by *State v. Petrone*, 161 Wis. 2d 530, 468 N.W.2d 676 (1991);; *Ebert v. Maryland State Bd. of Censors*, 19 Md. App. 300, 313 A.2d 536 (1973). Obscenity is not protected expression and may be suppressed without a showing of the circumstances which lie behind the phrase "clear and present danger" in its application to protected speech. *Roth v. United States*, 354 U.S. 476, 485, 77 S.Ct. 1304, 1309, 1 L.Ed.2d 1498. *United States v. Gendron*, 2009 WL 5909127 (E.D. Mo. Sept. 16, 2009) report and recommendation adopted, S2 4:08CR 244 RWS, 2010 WL 682315 (E.D. Mo. Feb. 23, 2010);; *Chapin v. Town of Southampton*, 457 F. Supp. 1170 (E.D.N.Y. 1978);; *Sovereign News Co. v. Falke*, 448 F. Supp. 306 (N.D. Ohio 1977);; *City of Portland v. Jacobsky*, 496 A.2d 646 (Me. 1985).

[17] Courts have found that "any school boy knows that a homosexual act is immoral, indecent, lewd, and obscene. Adult persons are even more conscious that this is true." *Schlegel v. United States*, 416 F.2d 1372, 1378 (Ct. Cl.1969). Accordingly, the Library knows that through their partnership with the LGBTQ church that the goal is to indoctrinate minors to non-secular ideology that is "immoral, indecent, lewd, and obscene." For centuries homosexual orthodoxy has been classified as obscene and the fact remains that "to simply adjust the definition of obscenity to social realities has always failed to be persuasive before the Courts of the United States." *Ginsberg v. New York*, 390 U.S. 629, 639–40, 88 S. Ct. 1274, 20 L. Ed. 2d 195 (1968); *Mishkin v. State of New York*, 383 U.S. 502, 509, 86 S. Ct. 958, 16 L. Ed. 2d 56 (1966); and *Bookcase, Inc. v. Broderick*, 18 N.Y.2d 71, 271 N.Y.S.2d 947, 951, 218 N.E.2d 668, 671 (1966).

[18] The consistent theme of the Plaintiffs' litigation is that the government must get out of the parody marriage business and must disentangle itself with the LGBTQ church completely because that is what the Establishment Clause requires; however, the Free Exercise Clause allows adults to buy into Secular Humanism without the government's interference or stamp of approval. As Prime Minister Churchill stated, "Where there is a lot of free speech, there is a lot of stupid speech." The Plaintiffs advocate for the Nation being place where stupid speech is permitted. See Bernie Sanders' economic ideas and the media's false characterization of the LGBTQ plight as one that is equal to the race-based civil rights movement.

[19] Just as government officials may not favor or endorse one religion over others, so too officials "may not favor or endorse religion generally over non-religion." *Lee v. Weissman*, 505 U.S. 577, 627, 112 S.Ct. 2649, 120 L.Ed.2d 467 (1992)(Souter, Justice, concurring)(citing *County of Allegheny v. ACLU*, 492 U.S. 573, 589-94, 109 S.Ct. 3086, 106 L.Ed.2d 472 (1989). "A proper respect for both the Free Exercise and the Establishment Clauses compels the State to pursue a course of "neutrality" toward religion,' favoring neither one religion over others nor religious adherents collectively over nonadherents." *Bord of Educ, of Kiryas Joel Vill. Sch. Dist.v. Grumet*, 512 U.S. 687, 696 (1994) (quoting *Nyquist*, 413 U.S. at 792-93). The U.S. Constitution, while permitting legislators to act on preferences in

Library's endorsement of the Drag Queen Story Hour for Constitutional reasons, the Plaintiffs

and their family members have been libeled, stalked, threatened, and harassed.[20] To avoid

litigation, the Plaintiffs filed complaints with the Library in step with the Library's guidelines,

using the Library's complaint forms.  The Library maintains its partnership with non-secular

organizations and plans to host the Drag Queen Story hour at the Library on a continuing basis at

the taxpayers expense.  It is Plaintiffs' contention that Defendants decision to (1) publicly partner

with non-secular LGBTQ organizations, to (2) promote Drag Queen Story Hour on its flyers, to

(3) highlight the exhibition on its website,[21] to (4) select the books, to (5) special order books for

the event with tax dollars,[22] to (6) violate its own guidelines on religious endorsement, to (7) give

less favorable treatment to Christian organizations, to (8) allow self-identified by transvestites to

---

policy and politics, plainly prohibits state actors to imbue official favored status on particular religious communities. See, e.g., id. at 703 (stating that the "fundamental source of constitutional concern" in that case was that the government "itself may fail to exercise governmental authority in a religiously neutral way" and lauding that "principle at the heart of the Establishment Clause, that government should not prefer one religion to another, or religion to irreligion"). "Whatever else the Establishment Clause may mean . . ., it certainly means at the very least that government may not demonstrate a preference for one particular sect or creed (including a preference for Christianity [and Secular Humanism] over other religions). The clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another." *County of Allegheny,* 492 U.S. at 605 (citations and internal quotation marks omitted). This includes a prohibition of government actors putting non-institutionalized religions, like the religion of Secular Humanism, over non-religion.

[20] Pastor Penkosky, a Drag Queen Story Hour protestor received these messages: "1. Sean Nicholson posted on my facebook page 'Warriors For Christ I'll sodomize you hateful pricks.' 2. Ashley Lanclos posted on my facebook page 'warriors for Christ rapes children' 3. Emma Latta posted on my facebook page 'you are a mother fuckign bigot,' and "sue me [sic] I'll find every anti gay tape there is of you and play it in court. Hint up front you will not win. I'll also claim a first amendment defense.' 4. Stephen Barnhart posted on my facebook page: 'do the world a favor [sic] kill yourself and family the word could use less

[21] The Library posted the following on its website: "Drag Queen Storytime Library: Freed-Montrose Neighborhood Library Date: 8/25/2018, 9/29/2018, 10/27/2018, 12/29/2018 Room: Freed-Montrose Library Meeting Room Time: 2:00PM - 2:45PM Type: Featured Event, Storytimes Age Group: appropriate for all ages. Share this: on facebook and twitter. Break out the dress up chest and let your imagination run wild as you join the Houston Public Library and local Drag Queens for storytime. These vibrant Queens will help to instill a sense of love and acceptance in our children while encouraging them to be true to themselves."

[22] See *Levitt v. Comm. for Pub. Educ. & Religious Liberty,* 413 U.S. 472, 480 (1973) ("[T]he State is constitutionally compelled to assure that the state-supported activity is not being used for religious indoctrination."); Furthermore, the Library is guilty of treating Secular Humanist better than the Plaintiffs and other non-observers of the religion of Secular Humanism living in Houston. The Library's actions demonstrate that "Aid to religious organizations, if provided at all, must be "allocated on the basis of neutral, secular criteria that neither favor nor disfavor religion, and [must be] made available to both religious and secular beneficiaries on a nondiscriminatory basis." *Agostini,* 521 U.S at 231.

prosethetize minors to a worldview that the Library advances, promotes and endorses the religion

in violation of the Establishment Clause of the First Amendment to the United States

Constitution. The Plaintiffs ask the Court to reasonably presume that such government aid

provided by the Library will, "knowingly or unknowingly, result in religious indoctrination."

*Bowen v. Kendrick*, 487 U.S. 589, 612 (1988). The fact is that the Defendants' actions are devoid

of any secular purpose. The Defendants seek to normalize false permission giving beliefs about

sex and to groom children for a higher likelihood that they someday are molested or that they

someday molest members of the same-sex. There is no love to be found in sexual exploitation

that is self-evidently immoral as rape by trick. The ideology that the Defendants seek to

manipulatively impose on the children of Houston manages to be racially, intellectually,

emotionally, and sexually. It is per se sexual immorality and unlawful pandering obscenity to

minors by self-identified transvestites in violation of Tex. Penal Code § 43.24. Plaintiffs seek a

preliminary injunction order from this Court restraining, enjoining and prohibiting Defendants

from partnering with non-secular LGBTQ organizations that seek to unleash the Drag Queen

Story Hour in a public place for 2 to 10 year olds for cause.[23]

### III. STANDING

The concept of standing is one aspect of justiciability. See *Flast v. Cohen,* 392 U.S. 83,

98 (1968). To establish standing under Article III of the United States Constitution a plaintiff

---

[23] The Library could potentially permit non-secular organizations to host the Drag Queen Story Hour for adults in a designated public forum in the Library. Yet, if the Library did that it would have to hold strip club story hour for adults as well upon request. Strip clubs and homosexuality are along the same seamless spectrum of sex-based sexual immorality that violates the givenness of our nature and the truth about the way things are from the reasonable observer standpoint. The courts and the legislatures have given libraries strong incentives to uphold community standards of decency and to not expose minors to sexually immorality. See *United States v. American Library Assn., Inc,* 539 U. S 194 (2003). Just as adult book stores can be zoned to hard to reach parts of towns away from children, the Court can zone the Drag Queen Story Hour for children out of the public library. *City of Los Angeles v. Alameda Books,* Inc. 535 U.S. 425, 122 S. Ct. 1728, 152 L. Ed. 2d 670 (2002). The LGBTQ church has secondary harmful effects on the public's health undermining compelling state interests to uphold decency.

must have suffered an injury in fact; he must have sustained an actual injury which is concrete and particularized. There must be a causal connection between the injury and the conduct complained of, meaning that the injury has to be fairly traceable to the challenged action of the defendant. Finally, it must be likely, and not merely speculative, that the injury will be redressed by a favorable decision. See *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *Murray v. City of Austin,* 947 F.2d 147 (5th Cir. 1999). The essential question for standing is whether a plaintiff has alleged "a personal stake" in a controversy, such that courts can be assured of a "concrete adverseness which sharpens the presentation of issues necessary for the illumination of difficult constitutional questions." *Baker v. Carr*, 369 U.S. 186, 204 (1962); *Saladin v, City of Milledgeville*, 812 F.2d 687, 690 (11th Cir. 1987).

"[T]he standing inquiry in Establishment Clause cases has been tailored to reflect the kind of injuries Establishment Clause plaintiffs are likely to suffer. * * *. [T]he Establishment Clause plaintiff is not likely to suffer physical injury or pecuniary loss directly affected by an alleged establishment of religion." Rather, "the spiritual, value-laden beliefs of the plaintiffs' are most often directly affected by an alleged establishment of religion. Accordingly, rules of standing recognize that noneconomic or intangible injury may suffice to make an Establishment Clause claim justiciable." *Suhre v. Hood Cty*., 131 F.3d 1083, 1086 (4tb Cir. 1977). This case involves such an intangible injury in fact.

The Plaintiffs or their agents are card carrying members of the Houston Public Library. They, their children, and their organization members use the Library for secular purposes to assist them with their work with the Texas State legislature and for other reasons. This includes the Plaintiffs efforts to pass the (1) Human Trafficking And Child Exploitation Prevention Act;

the (2) Stop Social Media Censorship Act; the (3) Elevated Marriage Act;  the (4) Marriage And

Constitution Restoration Act; the (5) Secular Humanism Resolution; the (6) the Life

Appropriation Act; and (7) other measures crafted to maximize human flourishing in a manner

that accords with neutral common sense.  They pay sales tax through their use of the Library.[24]

As taxpayers, when the Plaintiffs go to the Library for meetings, printing, rentals, and

other purposes, they do not want themselves or their children of Houston to be exposed to the

exhibition. The Plaintiffs do not want their children or other children exposed to a religious

obscene display endorsed by the Library that is rife with sexual innuendo and with sexual

practices that were effective illegal until 2003.  As taxpayers, the Plaintiffs do not want their

children exposed to the offensive exhibition.[25]  As made clear in *Staley v. Harris Cty*, 332 F.

Supp. 2d 1030 (S.D.Tex. 2004), dismissed and remanded, 485 F.3d 305 (5th Cir. 2007), the

threat of unwelcomed and continued contact is sufficient to meet the "injury in fact" requirement.

[26]  Thus, similar to the plaintiff in *Staley,* Plaintiffs here do not want to come into unwelcomed

---

[24] Because [the Plaintiffs] pay sales tax on an ongoing basis, [they are] continually forced to be an involuntary donor and give unwilling support [to the Library's efforts to entangle the government with the Religion of Secular Humanism]." See *Texas Monthly, Inc. v. Bullock*, 489 U.S. 1, 14 (1989). *Meis v. Sanitas Serv. Corp.*, 511 F.2d 655, 656 (5th Cir. 1975). Also, it is true that the Fourteenth Amendment protects the liberty of individuals to travel throughout the nation, uninhibited by statutes, rules, or regulations that unreasonably burden or restrict their movement. This right guards against interference with citizens' rights "to migrate, resettle, find a new job, and start a new life." *Shapiro v. Thompson*, 394 U.S. 618, 629 (1969).

[25] Here are cases that proceeded to judgment on the merits without mention of taxpayer standing doctrine. See *Hibbs v. Winn*, 542 U.S. 88 (2004) (holding that Tax Anti-Injunction Act did not bar taxpayer suit, without mentioning taxpayer standing issue);; *Mueller v. Allen*, 463 U.S. 388 (1983) (permitting taxpayers to challenge constitutionality of a tax deduction without mentioning standing issue);; *Comm. for Public Ed. & Religious Liberty v. Nyquist*, 413 U.S. 756 (1973) (permitting taxpayer challenge to school aid statute without mentioning standing issue);; *Hunt v. McNair*, 413 U.S. 734 (1973) (permitting taxpayer challenge to South Carolina statutory scheme of aid to colleges without mentioning standing);; *Walz v. Tax Comm. of the City of New York*, 397 U.S. 664 (1970) (permitting realty owner to challenge, on a taxpayer theory, tax exemptions for religious organizations without mentioning standing). Here is the common denominator in all of those cases: (1) government actors, whose salaries come from the taxpayers, (2) allegedly engaged in a course of action that could reasonably be considered to have a primary religious purpose over a secondary secular purpose, which (3) had some form of secondary adverse impact on the plaintiff(s). Courts should not exalt form over substance, especially when it may allow an end-run around the Establishment Clause and harms children.

[26] In *Staley*, the requirement was met by a plaintiff who is a resident and taxpayer of Harris County. She is also an attorney who passes by the monument going to and from the Courthouse in the course of her profession She testified

contact.[27]  The Plaintiffs do not want to come in contact with the exhibition at any time because

they have been victimized by devout Secular Humanists.  In *North Carolina Civil Liberties v.*

*Constangy,* 751 F,Supp. 552, 553 (W.D.N.C. 1990), aff f. 947 F.2d 1145 (40 Cir. 1991), cert.

den'd. 505 U.S. 1219, 112 S.Ct. 3027, 120 L.Ed.2d 898 (1992), the court commenced each

session with a prayer.  The practice was challenged by individual attorneys and the North

Carolina Civil Liberties Union on behalf of its members.  Standing was granted to attorneys who

had "been present for at least one recitation of Judge Constagny's court opening prayer." 751

F.Supp. at 553.  The "injury in fact" requirement was met by the some of the individual plaintiffs

even though they had appeared before Judge Constagny only once, and there was no allegation

that they would be required to appear before him again in the future.  Plaintiffs' "injury in fact" is

even stronger, for they intend to continue to use the Houston public libraries and the Libraries

intend to regularly sponsor the event.[28]

---

that she is offended by the Bible display in the Mosher memorial because it advances Christianity and it sends a message to her and to non" Christians that they are not full members of the Houston political community. 332 F.Supp.2d at 1034.

[27] The Plaintiffs object to the unconstitutional use of their tax dollars to support religious purposes, activities, and facilities; and that the organization's purpose is to protect constitutional rights); see a/so, e, g , *Bowen v. Kendrick*, 487 U.S. 618-20 (recognizing the longstanding rule that taxpayer standing is sufficient for Establishment Clause claims); *Friends of the Earth, Inc, v. Laidlaw Envtl, Serv.*, 528 U.S. 167, 181 (2000) (holding that an organization has standing to sue on behalf of its members when members would have standing to sue in their own right, where the interests at stake are germane to purpose of organization, and where the participation of individual members is not required. (citing *Hunt v. Washington State Apple Advertising Comm 'n*, 432 U.S. 333, 343 (1977)); *Sierra Club v. Cedar Point Oil Co. Inc.*, 73 F.3d 546, 555 (5th Cir. 1996) (same). Because the Court refuses to grant the Plaintiffs ECF access, the Court knows that the Plaintiffs are spending a lot of sale taxes in state. Because [the Plaintiffs] pay sales tax on an ongoing basis, [they are] continually forced to be an involuntary donor and give unwilling support [to the Library's efforts to entangle the government with the Religion of Secular Humanism]." See *Texas Monthly, Inc. v. Bullock*, 489 U.S. 1, 14 (1989). The printing alone for the filings submitted to this Court is proof of that. *Meis*, 511 F.2d at 656. A *prima facie* case does not mean that the plaintiff is entitled to summary judgment. *Janvey v. Alguire*, 647 F.3d 585, 595– 96 (5th Cir. 2011). Rather, the plaintiff needs only to present evidence of its substantial likelihood to succeed on the merits. *Id.*

[28] Plaintiff Sevier should be allowed to proceed on behalf of all of Special Forces Of Liberty because "the association must allege that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit." *Sierra Club v, Morton*, 404 U.S. 727, 734-741 (1972).

The children's Library is a non-designated public forum.[29] The Library has completely

disregarded its own policies on endorsing a religion under. B.2.1.26 of the manual.[30] The

exposure to Drag Queen Story Time is unwelcomed and offensive. The Drag Queen Story

Time's mere presence in the children' library gives impression that the City favors religion, at

least one particular religion - Secular Humanism. The facts of this case are more compelling

than those present in Costagny wherein standing was conferred upon the North Carolina Civil

Liberties Union. In that case, the association was allowed to file suit on behalf of "[a] number of

its members [who] live in Charlotte and may be subject to being ordered to attend Judge

Constangy's courtroom as witnesses or defendants in the same manner as any other citizens or

group of citizens." Standing was granted even though these plaintiffs had not yet been exposed to

Judge Constangy's Establishment Clause violations. 751 F.Supp. at 553.

Having established that Plaintiffs have sustained an injury, the next inquiry is whether the

injury is fairly traceable to the defendant." *Massachusetts v. EP.A*, 127 S.Ct. 1438, 1453 (2007).

It is without dispute that this second requirement has been satisfied. The injury sustained by

Plaintiffs is a direct "but for" result of the Defendants' policy and/or practice of (1) partnering

with non-secular organizations, (2) picking out the books, (3) special ordering them, (4)

---

[29] "In limited public and nonpublic forums, a government entity may impose restrictions on speech that are reasonable and viewpoint neutral." *Ortega v. Recreation & Parks Comm'n for Par. of E. Baton Rouge*, 2018 WL 3471890, at *3 (La. App. 1 Cir. 7/18/18). If the "government has intentionally designated a place or means of communication as a public forum, speakers cannot be excluded without a compelling governmental interest. Access to a nonpublic forum, however, can be restricted as long as the restrictions are 'reasonable and [are] not an effort to suppress expression merely because public officials oppose the speaker's view.' Id., at 46, 103 S.Ct., at 955." See *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc*., 473 U.S. 788, 800, 105 S. Ct. 3439, 3448, 87 L. Ed. 2d 567, 53 USLW 5116 (1985).

[30] ALA Policy Manual Section B, Page 18. B.2.1.26 Religion in Libraries states: "The First Amendment guarantees the right of individuals to believe and practice their religion or to practice no religion at all, and prohibits government from establishing or endorsing a religion or religions. Thus the freedom of, for and from religion, are similarly guaranteed. The First Amendment also guarantees the corollary right of individuals to receive information on religious topics. Libraries support this right by providing access to diverse religious thought without becoming a proponent of any of them. Adopted AC 2016 (See "Policy Reference File": Religion in American Libraries: An Interpretation of the Library Bill of Rights, 2015-2016 CD #19.9. Adopted June 28, 2016)." See

promoting the event on flyers, (5) promoting the event on the website, (6) giving special

treatment to the LGBTQ groups in violation of the Library's own policies under B.2.1.26.

"Were it not for the [Defendants,] [policy violations and/or practice], there would be no

constitutional injury." *Berger v, Berger v. Rensselaer Cent. Sch Corp.*, 766 F.Supp. 696, 702

(N.D. Ind. 1991), rev'd on other grounds, 982 F.2d 1160 (7th Cir. 1993), cert denied 508 U.S.

711, 113 S.Ct. 2344, 124 L.Ed.2d 254. The final inquiry asks whether a favorable judicial

decision is likely to redress Plaintiffs' injury.  See, e.g., *Massachusetts v. EPA,*, 127 S.Ct. at

1453.  To establish redressability, [Plaintiffs] must show that it is likely, as opposed to merely

speculative, that the injury will be redressed by a favorable decision.  *Friends of the Earth, Inc*,

528 U.S. at 181.  The Plaintiffs clearly meets this test, for the issuance of a decision on the merits

in favor of Plaintiffs can, and in this case will, prevent Defendants from continuing its

partnership with non-secular organizations that seek to use government assets to put on an

obscene non-secular exhibition crafted to indoctrinate children and to communicate to the entire

city that Secular Humanism is the favored religion of the Library, Texas, and the United States.

An injunction against future displays of the Drag Queen Story Hour exhibition in the

Public Library with the Public Library's endorsement will prevent the Plaintiffs from being

subjected to future Establishment Clause violations, while having the added benefit of

safeguarding children from government sponsored sexual immorality and indoctrination of

religous dogma.  Plaintiffs have established standing, for (1) there is an ongoing injury because

the Library's partnership continues with the LGBTQ non-secular organizations and because the

Library intends to continue the partnership indefinitely, (2) which is resulting from the Library's

unconstitutional policy violations and/or practice, and (3) which will be redressed by Court

injunction. The Library has spent tax dollars on promoting and sponsoring the event at the

objection of non-observers of the religion of Secular Humanism, and the Library will continue to

do so unless this Honorable Court enjoins it, requiring the Library to read and obey the United

States Constitution to cure the Library's and the ALA's Constitutional illiteracy and refusal to

think logically.

### IV. PLAINTIFFS ARE ENTITLED TO A PRELIMINARY INJUNCTION
### A. Applicable Legal Standard

This motion is filed pursuant to Rule 65, Fed. R. Civ. P.. The Plaintiffs have filed a

$10,000 bond in strike compliance with the rules even though the Library would not suffer any

economic harm if its partnership ended and if it was barred from hosting the event. The granting

or denial of a preliminary injunction rests in the discretion of the district court." *Johnson v,*

*Radford*, 449 F.2d 115, 117 (5th Cir. 1971); *Morgan v. Fletcher,* 518 F.2d 236, 239 (5th Cir.

1975); *Blue Bell Bio Medical v. Cz.n-Bad, Inc*., 864 F.2d 1253, 1256 (5th Cir. 1989). The

reason why the Court must grant the temporary, preliminary, and permanent injunction is

because the United States Supreme Court has emphasized that there are "heightened concerns

with protecting freedom of conscience from subtle coercive pressure in the elementary and

secondary public [institutions]," *Lee*, 505 U.S. at 592, and the federal courts have thus "been

particularly vigilant in monitoring compliance with the Establishment Clause" in the

public-school context, see *Edwards*, 482 U.S. at 578-583.[31] It follows that "heightened concerns"

---

[31] Two years after *Obergefell v. Hodges,* 1 35 S.Ct. 2584 (2015) and there has not been the "land rush" in gay marriage that was promised. There has been a land rush to persecute Christians with government assets and to use government assets to indoctrinate children to Secular Humanism ideology. The raw numbers tell the tale. Prior to the *Obergefell* decision two years ago, the 7.9 percent of gays who were married would have amounted to 154,000 married gay couples. Two years later, this had grown to 10.2 percent or 198,000 married couples. Gay marriage is a sham policy is a sham. Gay marriage is fake marriage, but the Persecution of Christians in the wake of the *Obergefell* putsch is real.

apply here to the Houston's children's library, which is public taxpayer funded facility, just like elementary schools are, with librarians whose salaries are paid for by the taxpayers, just like public elementary teachers are. The real reason why the Secular Humanists employees at the Library want to have the Library attached to Drag Queen Story Time instead of having self-identified transvestites plan the Drag Queen Story by themselves at a private location with materials that they paid for and selected and promoted by websites and social media that they control is because the whole point of the partnership is to communicate to impressionable minors, to the Plaintiffs, and to all Christians in Texas that Secular Humanism as advocated by the LGBTQ denomination is the favored religion of the Library, Texas, and the United States, as a ploy to recruit impressionable children to convert to their toxic worldview. It is an imperialistic political and religious power play that constitutes an absolute evil that the United States Constitution prohibits.

There are four prerequisites governing the issuance of a preliminary injunction by the district court: (1) substantial likelihood that plaintiff will prevail on the merits, (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted, (3) that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to defendant, and (4) that granting the preliminary injunction will not disserve the public interest. *Canal Authority of State of Florida v. Callaw,* 499 F.2d 567, 572 (5tb Cir. 1974); *DSC Communications Corp,, v, DGl Technologies, Inc.*, 81 F.2d 597, 600 (1996) (citations omitted).

### B. Applicable Legal Standard Applied to the Case At Bar
### 1. There is Substantial Likelihood That The Plaintiffs Will Prevail On The Merits

The First Amendment to the United States Constitution states that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." The

religion clauses of the First Amendment are made applicable to the States by the Fourteenth

Amendment. See *Everson v. Bd of Edu*c., 330 U.S. 1, 8, 67 S.Ct. 504, 508, 91 L.Ed 711 (1947)

(applying the Establishment Clause to the states); *Cantwell v. Connecticut,* 310 U.S. 296, 303,

60 S.Ct. 900, 903, 84 L.Ed. 1213 (1940) (applying the Free Exercise Clause to the states). The

Establishment Clause applies just as equally to Executive Branch expenditures as it does to

legislative exercises of the Taxing and Spending Power, to permit Executive Branch use of

appropriated funds to accomplish an unconstitutional end would mean that "Establishment

Clause protection would melt away." (Souter, J., dissenting).  *Hein v. Freedom From Religion*

*Foundatio*n, 551 U.S. 587, 640 (2007) (Souter, J., dissenting)

The constitutionality of the exhibition can be analyzed in light of the two recent Supreme

Court Establishment Clause decisions: *Van Orden v, Perry*, 545 U.S. 677 (2005), (Rehnquist,

plurality), and *McCreary County v. ACLU of Kentucky*, 545 U.S. 844, 860 (2005).  In *Van*

*Orden,* the Court phrased the issue as to "whether the Establishment Clause of the First

Amendment allows the display of a monument with the Ten Commandments on the Texas State

Capitol grounds." 545 US 681. In concluding that it does, the Court stressed the following

factors:

1. The monolith was not a stand alone monument.  Focusing on the 22 acres surrounding the
Texas State Capitol, the Court identified "17 monuments and 21 historical markers
commemorating the people, ideals, and events that compose Texas identity."
"The bottom of the monument bears the inscription PRESENTED TO THE PEOPLE AND
YOUTH OF TEXAS BY THE FRATERNAL ORDER OF EAGLES OF TEXAS 1961."'
3. The cost of erecting the monument was home by the Eagles. 4. The monument had existed in
its present location for 40 years prior to it being challenged on constitutional grounds.
5. Petitioner waited until six years after initially encountering the monument to file suit.
545 US 681 82.

In his concurring opinion Justice Breyer likewise concluded that the display did not

violate the Establishment Clause. *Id* at 705. He did not dispute the fact that the text of the Ten

Commandments carried a "religious message." However, he stated that "[in} certain contexts, a

display of the tablets of the Ten Commandments can convey not simply a religious message but

also a secular moral message (about proper standards of conduct) . . . [a]nd . .. . also . . . a

historical message (about a historic relation between those standards and law)." *Id* at 702.

Focusing on the issue at hand, Justice Breyer concluded that the tablets have been used as part of

a display that communicates a religious but a secular message as well." *Id.*  In reaching his

conclusion that there was not a violation of the Establishment Clause, Justice Brayer considered

numerous factors, chief among which were: 1. The circumstances surrounding the monument's

placement; 2. Who donated the monument; 3. The placement on state grounds; 4. The display's

physical setting; and 5. The amount of time the display stood unchallenged. *Id.* at 700-704.  First,

Justice Breyer found "[t]he physical setting of the monument . . suggests little or nothing of the

sacred.  The monument sits in a large park containing 17 monuments and 21 historical markers,

all designed to illustrate the ideals' of those who settled in Texas and of those who have lived

there since that time." *Id.* Second, the monument was donated by the Fraternal Order of Eagles,

an organization which "sought to highlight the Commandments' role in shaping civic morality as

part of the organization's efforts to combat juvenile delinquency." Id, at 701. The fact that the

tablets on the monument acknowledged that the monument was donated by the Fraternal Order

of Eagles "further distances the State itself from the religious aspect of the Commandment's

message." Id. at 701-702.  He placed significance on the fact that the monument was donated by

an organization seeking to combat juvenile delinquency. Id. Third, the fact that the monument

has existed and gone unchallenged for forty (40) years was seen as evidence by Justice Breyer

that few individuals were likely to have understood the monument as "a government effort to

favor . . religion [or] to compel' any religious practice.'" Id. at 702.

The factors employed by Justice Breyer are controlling in the immediate case. See

*Staley*, 485 F.3d at 309 ("Justice Breyer's concurrence is the controlling opinion in *Van Orden*,")

Applying those factors to the case at bar, it becomes obvious that the Drag Queen Story Time

violates the Establishment Clause:

1. The circumstances surrounding the partnership: Drag Queen Story Hour came after the
flawed decision in *Obergefell v . Hodges*, 135 S.Ct. 2584 (2015) that was so dishonest that
Justice Scalia called it an "egotistic...judicial putsch" that constitutes "a threat to American
Democracy." The history of homosexuality is that is was basically illegal until the Supreme
Court used *Lawrence v. Texas*,  539 U.S. 558 (2003) to overturn *Bowers v. Hardwick*,  478 U.S.
186 (1986) in error. Drag Queen Story Hour proves that gay marriage policy is sham. *Obergefell
v . Hodges*, 135 S.Ct. 2584 (2015) needs to be relegated to the same trash pile that *Dred Scott v.
Sandford,* 60 U.S. 393 (1857) has been placed in.

 2. Who organized Drag Queen Story Hour: Drag Queen Story Hour was not organized by a
secular group seeking to impart secular knowledge, but by Library and in coordianction with
non-secular groups with a non-secular message predicated on a series of unproven faith-based
assumptions that come directly out of the religion of Secular Humanism.

3. The placement on public property and the physical setting: the Drag Queen Story Hour is to
take place in the children's Library, which is a non-designated public forum and was selected in
violation of the Libraries own policies to maximize government sanctioned indoctrination of
minors to the unproven truth claims that are part of the the religion of Secular Humanism.

4. The amount of time the display exhibition went unchallenged:   The Plaintiffs, unlike the
plaintiff in *Van orden*, who passed the display at least 6 times prior to challenging it, challenged
it immediately upon hearing that the Library planned to sponsor and host the Drag Queen Story
Hour in partnership with a non-secular organization that consists of self-identified transvestites
who seek to pander obscenity to minors.

The facts of this case "indicate a governmental effort substantially to promote religion, not simply an effort primarily to reflect historically the secular impact of the religious inspired [children's books]." *Van Ogden*, 545 US at 703. The evidence suggests that the books that were selected and special ordered by the Library for the event attempt to normalize and encourage children to buy into dangerous unproven truth claims such as:

(1) there are more than two genders, (2) gay people are a people group, (3) a gay genes exists, (4) homosexuality is based on immutability like race is, (5) parody marriages are actual marriages, (6) truth is relative, (7) what is right for me is right for me and what is right for you is right for you, (8) people who disagree with homosexual orthodoxy are bigots, (9) sexual immorality is based on how the culture defines it, (10) it is good act upon your emotions and impulses.

All of those unproven truth claims are outrageously implausible, and according to ex-gays, medical professionals, licensed ministers, and persecuted Christians all of those truth claims amount to consolidated dogma that is inseparably linked to the religion of Secular Humanism.[32] The Library cannot endorse those beliefs just because the decision makers at the Library happen to themselves be zealous Secular Humanists who have emotional reasons for wanting to impose their spiritual take on reality onto minors in their government capacity. Courts have made it clear that emotional reasons - even really good ones - do not allow state actors to usurp the Establishment Clause. See *Holloman v. Harland*, 370 F.3 1252 (11th Cir. 2004).[33]   All of

---

[32] (DE _ Lisa Boucher ¶¶ 1-10; DE _ Quinlan ¶¶ 1-37; DE _ Pastor Cothran ¶¶ 1-50; DE _ Dr. King ¶¶ 1-20; DE _ Dr. Cretella ¶¶ 1-20; DE _ Goodspeed ¶¶ 1-20; DE _ Grace Harley ¶¶ 1-25; DE _Kohl ¶¶ 1-12; DE _ Pastor Cuozzo; ¶¶ 1-21; DE _ Pastor Farr ¶¶ 1-33; DE _ Pastor Penkoski ¶¶ 1-34; DE _ Pastor Cairns ¶¶ 1-30;; DE _ Christian Resistance ¶¶ 1-21; DE _ Special Forces Of Liberty ¶¶ 1-34).

[33] In *Holloman,* a public school teacher defended a daily moment of silent prayer by arguing that she intended to teach students compassion, pursuant to a character education plan mandated by the State. Id. at 1285. The court concluded that this emotional explanation did not constitute a valid secular purpose because the teacher's most basic intent unquestionably was to offer her students an opportunity to pray. "While [the teacher] may also have had a higher-order ultimate goal of promoting compassion, we look not only to the ultimate goal or objective of the behavior, but also to the more immediate, tangible, or lower-order consequences a government actor intends to bring about." Id. The unmistakable message of the Supreme Court's teaching in *Holloman* is that the state cannot employ a religious means to serve an otherwise legitimate secular interests." Id. at 1286. The *Holloman* court further concluded that "a person attempting to further an ostensibly secular purpose through avowedly religious means is considered to have a Constitutionally impermissible purpose." Id., citing *Jagar v. Douglas County School*, 862 F.2d

LGBTQ ideology, just like pro-abortion ideology, is predicated exclusively on a series of

unsubstantiated emotional appeals that the government cannot respect in view of the

Establishment Clause. *Obergefell v . Hodges*, 135 S.Ct. 2584 (2015), like *Roe v. Wade,* 410 U.S.

113 (1973), is based exclusively on emotion and lacks a single sentence of logic reasoning.

The next test to apply is the one employed by the Court in *McCreary*. *McCreary* was

also a display case.  In that case, the American Civil Liberties Union filed suit to remove a

display of the Ten Commandments featured prominently in a heavily trafficked area inside the

courthouse. Realizing the fact that Ten Commandments, standing alone, posed a significant

constitutional dilemma, the county decided to place other religious documents alongside it.  This

was to no avail, for the district court granted plaintiffs' request for an injunction, requiring the

county to remove the display.  In an effort to get around the ruling of the court, the county

changed the display for a third time. The third display was entitled, "The Foundations of

American Law and Government Display." It finally got around to including historical documents

together with the Ten Commandments.

The Court, per Justice Souter, found an Establishment Clause violation present where the

government acts with the "ostensible and predominant purpose of advancing religion" as judged

from an objective observer's standpoint taking into consideration the text, legislative history,

and "Implementation of the state action." *Id* at 8601. Addressing the three different displays,

Justice Souter held that they violated the Establishment Clause.  With regard to *McCreary* first

Ten Commandments display, the Court held that, especially in light of the lack of any sign

claiming a secular purpose, a "reasonable observer could only think that the Counties meant to

---

824, 830 (11th Cir.1989)("An intrinsically religious practice cannot meet the secular purpose prong of the *Lemon* test.")

emphasize and celebrate the Commandments' religious message." *Id.* at 868-869.  As for the second display, the Court found that the other documents had a religious content nature and the counties posted the Commandments precisely because of their sectarian content an impermissible purpose. *Id.* at 70, Regarding the last display, the Court held that even though the counties' actions do not "forever taint" all future displays of religious material, because "reasonable observers have reasonable memories,"no reasonable person could conclude that the counties had forgotten their original purpose." *Id.* at 866, 874. Based on those facts, the Court concluded that the displays violated the Establishment Clause. *Id.* at 879-881.

Applying *McCreary* to the facts herein, it is patently obvious that the Library's partnership with non-secular organizations and Drag Queen Story Hour and the Library's decision to display the exhibition at the public Library is calculated to indoctrinate minors to Secular Humanism in violation of the Establishment Clause.  The Library's display, endorsement, and promotion of Drag Queen Story Hour violates the Establishment Clause by a landslide for failing not one, but all three prongs of the *Lemon* test.  There can be no dispute respective to sectarian nature of Drag Queen Story Hour that has been crafted to target impressionable children at the outrage of the vast majority of the members in the community. The circus like element of the Drag Queen Story Hour would clearly lead the reasonable observer to think that the Defendants acted with the "ostensible and predominant purpose of advancing religion."  The Drag Queen Story Hour which involves men who self-identify as homosexual on a regular basis, pretending to be females, is a critique on religion and the very absolute truth that the United States Constitution and the Bill of Rights themselves are based on. Also, this exhibition is unequivocally a "critic on religion," and a critic on religion is almost

always a "new religion."  Additional, albeit not conclusive, evidence of the Defendants' desire to advance and foster Secular Humanism is the fact that the Library has violated a host of its own policies in putting forth an event in a non-designated public forum and violating its own policies on religious endorsement, while breaking the law under Tex. Penal Code § 43.24. Go figure. According to the Library's guidelines, the Library is prohibited from sponsoring and hosting religious events under ALA Policy Manual Section B, Page 18. B.2.1.26 Religion in Libraries states.  The Library is in direct violation of this policy in hosting and endorsing the Drag Queen Story Hour, providing a space for religious proselytizing the religion of Secular Humanism to 2 ro 10 year olds.[34] The Library would not let a sunday school teacher host Christian sunday school in the children's library, but the Library is permitting self-identified transvestites to host a Sunday school for the church of Secular Humanism in the children's Library, by male priest dressed as females.  Consider the following: (1) the selection of the books, (2) the target audience, (3) the location of the event all would lead the reasonable observer to conclude that the Library, the State of Texas, and the United States, Texas are under the thumb of the religion of Secular Humanism.  The Library's partnership with non-secular organization, and its participation in Drag Queen Story Hour is, therefore, unconstitutional.  Since the exhibition fails the test in both *Van Orden* and *McCreary* for being a non-secular religious display, the Plaintiffs have a strong likelihood of prevailing on the merits of this litigation.  See also the Plaintiff Shannon's motion for a temporary restraining order.

## 2. Plaintiffs Will Suffer Irreparable Harm If the Injunction Is Not Granted

---

[34] See ALA Policy Manual Section B: Positions and Public Policy Statements

In a recent decision, *Entertainment Software Ass ,n. v, Foll,* 451 F.Supp. 823, 835-836

(M.D.La. 2006), the court, addressing the issue of irreparable harm, stated:

The Supreme Court has made clear that the "loss of First Amendment freedoms, for even
minimal period of time, unquestionably constitutes irreparable injury. *Elrod v. Burns*, 427 U.S.
347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); *Deerfielded Med Ctr. v, City of Deerfield
Beach*, 661 F.2d 328, 338 (5th Cir. 1981). In the First Amendment context, irreparable injury
"stems from the intangible nature of the benefits flowing from the exercise of those rights and
the fear that, if these rights are not jealously safeguarded, persons will be deterred, even if
imperceptibly, from exercising those rights in the future." *United Food & Commercial Workers
Union, Local 1099 v. Sw. Ohio Reg 7 Transit Auth,,* 163 F.3d 341, 363 (6th Cir. 1988)(internal
quotation marks omitted).

"It has been repeatedly recognized by the federal courts that violation of constitutional rights

constitutes irreparable injury as a matter of law." *Springtree Apartments, ALPIC v. Livingston

Parish Council*, 207 F, Supp. 2d 507, 515 (M.D. La. 2001). See also, *Killebrew v. City of

Greenwood*, 988 F. Supp. 1014, 1016 (N.D. Miss. 1997) ("Plaintiffs' claims are primarily based

upon violation of their constitutional rights under the Equal Protection Clause of the Fourteenth

Amendment, and thus, the threat of irreparable injury is present as a matter of law."); *Murillo v.

Musegades*, 809 F. Supp. 487, 497 (W.D. Tex. 1992) ("Irreparable injury is established upon

movants showing constitutionally protected rights have been violated."); *Wiggins v, Stone*, 570

F. Supp. 1451, 1453 (M.D. La. 1983) ("[I]t is well established that deprivation of a

constitutionally protected right constitutes irreparable injury[.]"); 11A Charles Alan Wright,

Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2948.1 (2d ed.1995)

("When an alleged constitutional right is involved, most courts hold that no further showing of

irreparable injury is necessary."). This reasoning essentially collapses the "likehhood of success

on the merits" and "irreparable harm" prongs of the injunctive inquiry where constitutional rights

are at stake. *Forum for Academic & lust, Rights v. Rumsfeld*, 390 F.3d 219, 246 (3rd Cir. 2004).

The presumption of irreparable harm entitling a movant to injunctive relief arises in these

circumstances because where constitutional rights are at stake, monetary compensation is not an

adequate remedy. Because the Library's actions "unjustly infringes upon First Amendment

freedoms, there is a substantial likelihood that irreparable harm will result if the [preliminary

injunction] is not granted." *Wexler v, City of New Orleans,* 267 F. 2d 559, 568 (E,D.La. 2003).

Indeed, if the preliminary injunction is not granted, Plaintiffs will be placed in an untenable

position.  They will have to choose between not going to the Public Library, not bringing their

children, trying to dodge the Library's promotion crusade, or going and having themselves or

their children exposed to an obscene religious exhibition that has the government's stamp of

approval.  It is well established that a person need not forego a venue which they otherwise have

a right to be to avoid contact with an unconstitutional practice. This "compliance or forfeiture"

requirement was expressly rejected in *Lee id.* at 596. The Public Library is a place where the

Plaintiffs have a right to be.  The children's Library is not a place where self-identified Drag

Queens have the right to put on an obscene exhibition for children with the Library's

endorsement at the taxpayers expense.

### 3. The Threatened Harm to Plaintiff Will Outweigh the Threatened Harm to Defendant If the Injunction is Not Granted

The public has an interest in upholding community standards of decency from being eroded by

individuals with an emotional problem absolute truth.  If the Library is allowed to continue its

public partnership with non-secular LGBTQ organizations and the Drag Queen Story Hour, if the

Library is permitted to violate its own policies in endorsing the Drag Queen Story Hour, and if

the Library is allowed to display the Drag Queen Story Hour for children in a public building the

"Plaintiffs will be denied First Amendment Freedoms . . whereas Defendant[s] do not appear to

be at any risk of suffering harm. Thus in balancing the equities, the scale tips in favor of the

[P]laintiffs." *Wexler, id*, at 568-569.

#### 4. Granting the Injunction Will Not Disserve the Public Interest

The public does not have an interest in perpetuating a violation of the Establishment Clause.

Indeed, the public interest would be harmed if the Library were allowed to violate its own

policies put on the Drag Queen Story Hour display in partnership with non-secular organizations.

It is well-settled law that the public interest is always served by ensuring compliance with the

Constitution and civil rights law. See, e.g., *Valley v. Rapides Parish School Board,* 118 F.3d

1047, 1056 (5th Cir. 1997) (finding that public interest would be undermined if unconstitutional

actions of a school board were permitted to stand); *G&V Lounge, Inc, v. Mich. Liquor Control

Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994) (holding that it is always in the public interest to

prevent violation of constitutional rights).[35] "The public interest is best served by enjoining a

statute that unconstitutionally impair First Amendment rights." *Forum for Acad & Inst, Rights*,

390 F.3d at 246.  Further, the public has a substantial interest in promoting the well-being of the

community and maintaining the 'historic constitutionally mandated neutrality of government

toward religion. An injunction would eliminate Library's unmistakable and destructive message

that Secular Humanism is the favored religion of the public Library, by Texas, and for the United

States.  The public interest is best served by enjoining the Library from displaying the Drag

---

[35] "The public interest is best served by enjoining any [government action] which impermissibly favors a religious group in violation of the Establishment Clause of the First Amendment until it can be conclusively determined whether the [government action] withstands constitutional scrutiny."*New Orleans Secular Humanist Ass Inc, v. Bridges*, Civ, A. No. 04-3165, 2006 WL 1005008, at *6 (E.D. La. Apr. 17, 2006) see also, e.g, *Entm 't Software Ass 'n v. Foll*, 451 F. Supp. 2d 823, 837 (M-D. La, 2006); *Weaver v, City of New Orleans*, 267 F. Supp. 2d 559, 568-69 (E.D. La., 2003); *Foster*, 2002 WL 1733651, at *2

Queen Story Hour  exhibition or from partnering with the non-secular organizations to display it

elsewhere in an area accessible to the public "until it can be conclusively determined that the

[exhibition] withstands constitutional scrutiny." *Wexler, id , Entertainment Software Ass'n, Id.* at

835-836. In Conclusion, the Court should grant the restraining order like the Lousiana Court did.


Respectfully submitted:

/s/Chris Sevier Esq./
DE FACTO ATTORNEY GENERALS
SPECIAL FORCES OF LIBERTY
ghostwarsmusic@gmail.com
BPR# 026577
1720 Bissonnet,
Houston, Texas 77005
(615) 500-4411
Bravo Three Zero

/s/Tex Christopher/
1720 Bissonnet,
Houston, Texas 77005
(832) 233-8879
Bravo Three Zero
(For will be represented by Eric Dick Esq.)


## CERTIFICATE OF SERVICE

I hereby certify that a copy of this document and attached exhibits were mailed with adequate
postage to the Defendants in this actions on October 22, 2018 to Mayor Sylvester Turner City of
Houston P.O. Box 1562 Houston, TX 77251;; Defendant Lawson, 500 McKinney Street
Houston, Texas 77002 (832) 393-1313:::


/s/Chris Sevier Esq./