United States Courts
Southern District of Texas
FILED

OCT 25 2018

David J. Bradley, Clerk of Court

IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS HOUSTON DIVISION

| | | |
|---|---|---|
| **TEX CHRISTOPHER, in his capacity as a community leader, TRACY SHANNON, Mass Resistance Houston Division, PASTOR CALVIN MILLER, founder of 1 Team 1 Fight Ministries, LT MARK CHRISTOPHER SEVIER, De Facto Attorney Generals and Special Forces Of Liberty,**<br><br>**V.**<br><br>**RHEA LAWSON, Ph.D., Executive Director Of The Houston Public Library, SYLVESTER TURNER, in his official capacity as Mayor of Houston *Defendants*** | | **Case No: 4:18-cv-03943**<br><br>**Before Honorable Chief Judge Rothenthal** |

**PLAINTIFF TEX CHRISTOPHER'S MOTION FOR RECONSIDERATION ON THE MOTION FOR A TEMPORARY RESTRAINING ORDER JOINED BY PLAINTIFF SEVIER**

NOW COMES Plaintiffs Tex Chrisopther and Sevier pursuant to Fed. R. Civ. P. 54, 59, and 60 asking the court to (1) stop playing games and to (2) set aside its substanceless and intentionally abusive order and to issue a temporary restraining order. (see DE 24 and 25). A separate memorandum of law is attached. The memorandum is overlength but since this is a

Constitutional action where the record is required to put substance over form, leave is requested pursuant to LR7 et. seq. for permission to file the memorandum. The Court's October 24, 2018 orders at DE 24 and 25 are an embarrassment to the Judiciary. After nearly three decades on the Court Judge Rosenthal should know not to engage in that kind of wilful judicial misconduct. Plaintiff Sevier will have a field day with the Court's order when he returns to the Hill in two weeks. The Plaintiffs asked Judge Rosenthal to find within her the common sense to follow the example of Judge Summerhays and Magistrate Hanna from the Western District of Lousiana and to issue a restraining order against the Library and the Mayor for the duration of the trial. Judge Rosenthal has deliberately failed to leave her personal feelings and politics out side of the Courtroom and play the role of a neutral umpire. In response to the wreckless order floated by Judge Rosenthal on October 24, 2018 at 5:07 Gabrielle Banks from the Houston Chronicle sent Plaintiff Sevier this email:

**From:** Banks, Gabrielle <Gabrielle.Banks@chron.com>
**Sent:** Saturday, October 24, 2018 8:05 PM
**To:** Special Forces Of Liberty [mailto:ghostwarsmusic@gmail.com]
**Subject:** Drag Queen Story Hour Lawsuit
"I'd welcome a comment on the denial of the injunction today by Judge Rosenthal. Could you tell me how many city libraries you have sued? Is this the first? Also I'm assuming this is Chris Sevier, of laptop fame, yes? Can you remind me where you live and how old you are?"

She then proceeded to publish another dishonest hit piece, which will now make the Court look totally idiotic since the evidence shows that this case is rife with merit. Banks published:

A federal judge in Houston swiftly ended a chapter Wednesday for a group of conservative Christian activists seeking to stop the Drag Queen Story Hour at a local public library. Chief U.S. District Judge Lee H. Rosenthal put it simply in her four sentence order, issued just days after the lawsuit — blasting gay marriage and transgender public events— was filed against Mayor Sylvester Turner and Rhea Lawson, the head of the city's library system. The judge

explained the four litigants applied for injunction to halt the story hour on the grounds that it violated the freedom or religion clause in the Constitution and said, "There is no basis to support the requested relief. The application is denied."     The four individuals behind the case have not hired a lawyer. Mayor Sylvester Turner had a succinct reaction to the news on Wednesday that the group's request had been denied: "It's a frivolous lawsuit," he said, adding that no public money is used to fund the event, which was created by community members at the Freed-Montrose Library. Turner recently touted Houston as "the most diverse city in America." "We acknowledge and celebrate that diversity in all its dimensions," he said. "As mayor of this city I want us to be diverse and inclusive and I want to live in a city where people can be who they are and we can be tolerant of people's opinions, ideologies, sexual orientation, ethnicities, religion and... cultures." The story hour, one of many such events that is held around the country, is meant to inspire children to read and offer diverse role models, according to its organizers.

Judge Rosenthal's order is frivous and lacks a single sentance explaining her abusive decision.

Judge Rosenthal's imperialism could create an internal circuit split. Furthermore, because Judge Rosenthal has decided not to take her job seriously, a unit from the Special Forces of Liberty and De Facto Attorney General have elected to file a lawsuit against the Mobile public library in Alabama in the Eleventh Circuit. So the truth is that Judge's Rosenthal's  laziness and intentionally dereliction of duty has managed to provoke the expansion of the conflict.

    The Plaintiffs are likely to prevail on the merits because the Library special ordered the books, paid for the promotion, violated its own guidelines, selected the books, targeted children, favored the Drag Queen Storytime over other programs.

    In terms of irreparable harm, the United States Supreme Court squarely decided this point when it comes to the First Amendment and requests for restraining orders, stating, "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (citing *N.Y. Times Co. v. United States,* 403 U.S. 713 (1971). See also in the Fifth Circuit, "it is well settled that the loss of First Amendment freedoms even for minimal periods of time constitutes irreparable injury justifying the grant of a preliminary injunction." *D eerfield Medical Center v. City of Deerfield Beach*, 661

F.2d 328, 338 (5th Cir. Unit B 1981) (citing Elrod v. Burns, 427 U.S. 347, 373 (1976)). See also *CS E v. Bryant I,* 64 F. Supp. 3d 906, 950 (S.D. Miss. 2015). The Court construes the First Amendment presumption of irreparable harm to encompass the Establishment Clause claims at issue here. *Am. Civil Liberties Union Found. of Louisiana v. Crawford,* 2002 WL 461649, at 1 (E.D. La. Mar. 21, 2002). The Public Library, a tax fund actor, is putting on a non-secular exhibition, at the public library, having spent tax dollars in furtherance of the event to advance its partnership with religious Secular Humanist organization. The Court has a duty to issue an order stopping an event scheduled for October 27, 2018 that puts the religion of Secular Humanism over non-religion until these matters are full adjudicated. By not stopping the event, the Plaintiffs are relegated to second class citizen status, as non-observers of the religion of Secular Humanism. The Court cannot just sit there and let the Plaintiffs be injured only to then declare that the Plaintiffs did not deserve to be injured by the Library later on.

  The balance of harms and public interests resolves in the Plaintiffs favor because by canceling the event the Library will actually save money because it has turned off a huge portion of the community as a result of its decision to engage in group think and host an objectively immoral and non-secular obscene exhibition in direct violation of the obscenity code under Tex. Penal Code § 43.24.

  By way of analogy, this case involves a scenario where the Court is basically saying that it is ok for a robber to steal from the plaintiffs and then later it can be determined if the theft was was justifiable. The Court needs to self-correct in order to not lose the public's trust. This is a case where the Public Library, a tax funded entity, has defiantly and publicly partnered with a non-secular organization to put on an obscene exhibition to 3 to 6 year olds in the children's

division of the public library that is unlawful under Tex. Penal Code § 43.24. "Sale, exhibition, or distribution of material harmful to minors."). If the Court continues to remain asleep at the wheel, the Plaintiffs will have the District Attorney's office arrest Mrs. Elberson for violatingTex. Penal Code § 43.24 only to then turn around and blame this Court publicly for its inexcusable non-responsiveness  Congress can give strong incentives to schools and libraries to undertake steps to protect children from being exposed to material that is sexually immoral. See *United States v. American Library Assn., Inc*, 539 U. S 194 (2003).

This is an action where the Plaintiffs are demanding that the Court require (1) Public Library be enjoined from hosting the Drag Queen Story Hour for children at the Library and that (2) the public library publicly terminate its non-secular partnership with non-secular organizations and the Drag Queen Story Hour that has the effect of excessively entangling the government with the religion of Secular Humanism - i.e. postmodern western individualistic moral relativism and expressive individualism. The United States Supreme Court has recognized that Secular Humanism is a religion. See *Torcaso v. Watkins,* 367 U.S. 488, n. 11 (1961) and re-acknowledged in *Ed wards v. Ag uillard*, 482 U.S. 578 (1987). See also *Washington Ethical Society v. D istrict of C olumbi*a,1 01U.S. App. D.C. 371, 249 F.2d 127 (1957); 2 Encyclopaedia of the Social Sciences, 293; J. Archer, Faiths Men Live By 120—138, 254—313 (2d ed. revised by Purinton 1958); Stokes & Pfeffer, supra, n. 3, at 560. Welsh v. U.S, 1970398 U.S. 333 (U.S. Cal. June 15). The actual evidence shows that sexual orientation and homosexual orthodoxy that will be preached at the October 27, 2018 event to 3 to 6 year olds that the public library has excessively endorsed is inseparably linked to the religion of Secular Humanism.(DE 13 Lisa Boucher ¶¶ 1-10; DE 12 Quinlan ¶¶ 1-37; DE 21 Pastor Cothran ¶¶ 1-50; DE 14 Dr. King ¶¶

1-20; DE 20 Dr. Cretella ¶¶ 1-20; DE 19 Goodspeed ¶¶ 1-20; DE 11 Grace Harley ¶¶ 1-25; DE 18 Pastor Cuozzo; ¶¶ 1-21; DE 10 Pastor Farr ¶¶ 1-33; DE 17 Pastor Penkoski ¶¶ 1-34; DE 15 Pastor Cairns ¶¶ 1-30;; DE 16 Christian Resistance ¶¶ 1-21; DE _ Special Forces Of Liberty ¶¶ 1-34). See Amicus Briefs of the Center For Garden State Families; the WW Bridal and the American Family Association of PA; National Alliance of Black Pastors; and the Coalition of Doctors Defending Reparative Therapy. In view of *Real Alternatives, In c. v. Burwell,* the LGBTQ groups that have partnered with the Library are non-secular organization because they are (1) full, (2) organized, and (3) has a daily code by which members may guide their lives.[44] It takes a huge amount of faith to believe that same-sex living is not immoral and that it does not erode community standards of decency. If Judge Rosenthal and the Mayor cannot see that then they lack the character fitness to serve in office and should be removed for cause.

---

[44] *Real Alternatives, In c. v. Burwell,* 150 F. Supp. 3d 419, 440–41 (M.D. Pa. 2015), aff'd sub nom. *Real Alternatives, Inc. v. Sec'y De p't of He alth & Human Servs.,* No.16-1275, 2017 WL3324690 (3d Cir. Aug. 4, 2017). In *Real Alternatives,* the court stated: "W e detect a difference in the "philosophical views" espoused by [the plaintiffs], and the "secular moral system[s]...equivalent to religion except for non-belief in God" that Judge Easterbrook describes in *Center for Inquiry,* 758 F.3d at 873. There, the Seventh Circuit references organized groups of people who subscribe to belief systems such as Atheism, Shintoism, Janism, Buddhism, and secular humanism, all of which "are situated similarly to religions in everything except belief in a deity." *Id.* at 872. These systems are organized, full, and provide a comprehensive code by which individuals may guide their daily activities. Delta Lambda Phi is "organized, full, and provide[s] a comprehensive code by which [its members can guide their daily lives.] Instead of having a cross or the ten commandments, the LGBTQ church has the gay pride flag and their own commandments, such as if you disagree with LGBTQ ideology you are a bigot worth marginalizing. The unproven naked truth claims evangelized by the LGBTQ church such as (1) there is a gay gene, that (2) people can be born in the wrong body, that (3) same-sex sexual activity checks out with the human design, that (4) same-sex buggery is not immoral, and that (5) people come out of the closest baptized gay consists of a series of unproven faith based assumptions that are hyper religious and take a huge amount of faith to believe are even real, since these truth claims buck common sense and are more likely than not shallow qualifiers hoping to justify immoral sexual conduct that is indecent, immoral, and questionably legal.

The Establishment Clause of the First Amendment, made applicable to the states through the Fourteenth Amendment, *Widmar v. Vincent,* 454 U.S. 263, 271 n. 8, 102 S.Ct. 269, 70 L.Ed.2d 440 (1981), provides that "Congress shall make no law respecting an establishment of religion ...." U.S. Const. amend. I. This Clause, among other things, prohibits the government from preferring one religion over another. *Larson v. Valente,* 456 U.S. 228, 244, 102 S.Ct. 1673, 72 L.Ed.2d 33 (1982) ("The clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another."); *Mayweathers v. Newland,* 314 F.3d 1062, 1068 (9th Cir.2002) ( "The Establishment Clause of the First Amendment prohibits any government from enacting a law that would respect the establishment of religion."), *cert. denied sub. nom, Alameida v. Mayweathers,* 540 U.S. 815, 124 S.Ct. 66, 157 L.Ed.2d 30 (2003).

The public Library violated the Establishment Clause in forming a partnership with non-secular groups to put on the exhibition for children for failing all three prongs of the *Lemon Test*. To pass muster under the Establishment Clause, a practice must satisfy the *Lemon* test, pursuant to which it must: (1) have

a valid secular purpose;12 (2) not have the effect of advancing, endorsing, or inhibiting religion;13 and (3) not foster excessive entanglement with religion." See *Lemon v. Kurtzman,* 403 U.S. 602 (1971). Government action "violates the Establishment Clause if it fails to satisfy any of these prongs." *Edwards,* 482 U.S. at 583; *Agostini v. Felton,* 521 U.S. 203, 218 (1997).

The Library's actions taken in its partnership with Lambda Delta Phi has caused it to violate all three prongs of *Lemon*. The Library's Drag Queen Story Hour constitutes (1) non-secular activity that (2) has cultivated an indefensive weapon against the Plaintiffs by Secular Humanists who have threatened to assault the Plaintiffs, their family members, and their counsel, while (3) excessively entangling the government with the religion of Secular Humanism. The Plaintiffs have served this Court with examples of several threats issued to them and their family members by self-identified transvestites who feel entitled to break the law because the Library has endorsed their beliefs on sex, faith, marriage, and morality. The Court cannot suggest, "well its ok."

The Library's endorsement of Drag Queen Story Hour is not creating tolerance. The idea that it does makes it a sham. The decision of dishonest reporters like Gabrielle Banks false reporting at the Houston Chronicle, combined with the Mayors frivous position that "the case is frivolous because the case is frivolous" argument, taken with provable immoral feeling floated by Judge Rosenthal that the "request has no basis because the case has no basis" taken together shows any reasonable observer that gay marriage policies, Drag Queen Storytime policies, conversion therapy bans, government paid for sex-change operations, government mandated changing of pronouns, sexula orientation discrimination statutes are all a sham. If this countinues to promote judicial fascism by mischaractering religious conduct under the fiction of diversity, it could lead to sedition and violence. The Plaintiffs are asking Lee Rosenthal to obey her oath of office and to stop engaging in imperialism.

The Library's partnership with non-secular groups to put on the Drag Queen Story Hour is plunging secular humanists into a greater state of darkness and making them even more

self-entitled and dangerous. The Plaintiffs are being criminally harassed as a direct consequence, and the Court is indifferent because it clearly does not understand the First Amendment. After nearly three decades on the bench Judge Rosenthal's graspe of Establishment Clause jurisprudence is pathetic at best.

   The Library is prohibited from appropriating tax dollars to advance their partnership with a non-secular organization that is targeting children. As victims of the Secular Humanist church and as card carrying members of the Houston public library, the Plaintiffs are deeply offended that the Library is using taxpayer assets and dollars to endorse a non-secular event that is calculated to indoctrinate minors. "Because [the Plaintiffs] pay sales tax on an ongoing basis, [they are] continually forced to be an involuntary donor and give unwilling support [to the Library's efforts to entangle the government with the Religion of Secular Humanism]." *See Texas Monthly, Inc. v. Bullock,* 4 89 U.S. 1, 14 (1989). As former Soldier commissioned by DOD on the ROL under Title 10 jurisdiction, Plaintiff Sevier and the other Plaintiffs do not want to be marginalized to second class citizens because the Library feels entitled to use its government capacity to endorse the religion of Secular Humanism. By refusing to issue the temporary restraining order the Court is allowing the Library to continued to put religion over non-religion, while telling other government actors to follow the Library's lead. Just as

government officials may not favor or endorse one religion over others, so too officials "may not favor or endorse religion generally over non-religion." *Lee v. Weissman*, 505 U.S. 577, 627, 112 S.Ct. 2649, 120 L.Ed.2d 467 (1992)(Souter, Justice, concurring)(citing *County of Allegheny v. ACLU*, 492 U.S. 573, 589-94, 109 S.Ct. 3086, 106 L.Ed.2d 472 (1989).

The Library has partnered with non-secular groups to put on Drag Queen Story Hours for the purpose of using the government's stamp of approval to indoctrinate minors to a religious worldview that seeks to justify objective acts of immorality. The United States Supreme Court has emphasized that there are "heightened concerns with protecting freedom of conscience from subtle coercive pressure in the elementary and secondary public schools," *Lee*, 505 U.S. at 592, and the federal courts have thus "been particularly vigilant in monitoring compliance with the Establishment Clause" in the public-school context, see *Edwards*, 482 U.S. at 578-583. It follows that "heightened concerns" apply here to the Lafayette children's library, which is a public taxpayer funded building, just like elementary schools are, with librarians whose salaries are paid for by the taxpayers, just like public elementary teachers are. The real reason why the librarians want to have the library attached to Drag Queen Story Hour instead of having self-identified transvestites plan the Drag Queen Story by themselves at a private location with materials that the self-identified transvestites paid for and selected is because the whole point of the partnership is to communicate to impressionable minors, to the Plaintiffs, and to all Christians in Texas that the government has made religion of Secular Humanism as advocated by the LGBTQ denomination the official supreme religion of the state. It is an imperialistic political and religious power play that constitutes an evil that the United States Constitution prohibits.

**STANDARD OF REVIEW**

The Federal Rules do not recognize a motion for consideration, it has consistently recognized that such a motion may challenge a judgment or order under Federal Rules of Civil Procedure 54(b), 59(e), or 60(b).*Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 173 (5th Cir. 1990). Rules 59 and 60, however, apply only to final judgments. When a party seeks to revise an order that adjudicates fewer than all the claims among all of the parties, Federal Rule of Civil Procedure 54(b) controls. Fed.R.Civ.P. 54(b). See also, *Helena Labs.*, 483 F.Supp.2d 538 (motion for reconsideration under Rule 59(e) treated as under Rule 54(b) because reconsideration of partial summary judgment order was sought and no final judgment had yet been entered in the case). The Rule states: [A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Under Rule 54(b), the district court "possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." However, this broad discretion must be exercised sparingly in order to forestall the perpetual reexamination of orders and the resulting burdens and delays. Further, the decision of the district court to grant or deny a motion for reconsideration will only be reviewed for an abuse of discretion. *Martin v. H.M.B. Constr. Co.*, 279 F.2d 495, 496 (5th Cir. 1960) (citation omitted). See also, *Garcia v. Woman's Hosp. of Tex.*, 97 F.3d 810, 814 (5th Cir. 1996). The general practice of courts in this district has been to evaluate Rule 54(b) motions to reconsider under the same standards that govern Rule 59(e) motions to alter or amend a final judgment. See, e.g., *Castrillo*, 2010 WL 1424398, at *3; *Rosemond v. AIG Ins.*, 2009 WL 1211020, at *2 (E.D.La.

May 4, 2009) (Barbier, J.). A Rule 59(e) motion "calls into question the correctness of a judgment," and courts have considerable discretion in deciding whether to grant such a motion. *Tex. Comptroller of Pub. Accounts v. Transtexas Gas Corp.* (In re Transtexas Gas Corp.), 303 F.3d 571, 581 (5th Cir. 2002). In exercising this discretion, courts must carefully balance the interests of justice with the need for finality. Courts in Louisiana have generally considered four factors in deciding a motion under the Rule 59(e) standard: (1) the motion is necessary to correct a manifest error of law or fact upon which the judgment is based; (2) the movant presents newly discovered or previously unavailable evidence; (3) the motion is necessary in order to prevent manifest injustice; or (4) the motion is justified by an intervening change in controlling law.

Importantly, Rule 54(b) motions, like those under Rules 59(e) and 60(b), are not the proper vehicle for rehashing evidence, legal theories, or arguments. *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990). Instead, they "serve the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence." *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir.1989). Reconsideration, therefore, is not to be lightly granted, as "[r]econsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly" and the motion must "clearly establish" that reconsideration is warranted. *Templet v. Hydro Chem Inc.*, 367 F.3d 473, 478–79 (5th Cir. 2004).

Moreover, it is well-settled that motions for reconsideration should not be used to raise arguments that could, and should, have been made before entry of an order or to re-urge matters that have already been advanced by a party. See *Browning v. Navarro*, 894 F.2d 99, 100 (5th Cir. 1990). When there exists no independent reason for reconsideration other than mere disagreement with a prior order, reconsideration is a waste of judicial time and resources and

should not be granted. *Livingston Downs Racing Ass'n v. Jefferson Downs Corp.*, 259 F.Supp.2d 471 (M.D.La. 2002). See also, *Mata v. Schoch*, 337 B.R. 138 (S.D.Tex. 2005) (refusing reconsideration where no new evidence was presented). See also, *FDIC v. Cage*, 810 F.Supp. 745, 747 (D.Miss. 1993) (refusing reconsideration where the motion merely disagreed with the court and did not demonstrate clear error of law or manifest injustice)

## CONCLUSION

Judge Rosenthal's imperialism has the ability to generate a huge amount of bad precedent. Judge Rosenthal has no basis for not issuing a restraining order because Judge Rosenthal has no basis for not issuing a restraining order. Judge Rosenthal is playing politics in violation of her oath of office. As pro se litigants, the Plaintiffs - who are not really pro se litigants since they are attorneys or since they have counsel who is working to appear pro hac - are held to less stringent standards. *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)(*quoting Haines v. Kerner,* 404 U.S. 519, 520-21 (1972)) (internal quotation marks omitted). The arrogant Mayor floated a dishonest statement in opposition to this case on October 22 and October 23, 2018. His office is well aware of this case. Plaintiff Sevier spoke to the city Attorney's office on October 24, 2018. He asked the City Attorney if they would agree to have oral argument on October 26, 2018 on the motions for restraining orders. The City attorney did not agree. But the evidence shows that the Defendants are fully informed of this controversy.

      Here is the bottomline, dishonesty does not pay and bullies never win. Because Judge Rosenthal thought it would be smart to abuse her authority and play politics, the Plaintiffs have already pressed a button and expanded the conflict out of the Fifth Circuit. The Judiciary is acting like children when it comes to fake gay civil rights putsch who have been caught in a lie.

Now that Justice Kavanaugh has been confirmed the governments entanglement with the LGBTQ church is doomed. Judge Rosenthal can do things the easy way or the hard way, it makes no difference to the Plaintiffs. If this Court is non-responsive, then Plaintiffs and anyone else in the city has the fundamental right to use any means available to force the Library to not put on the Drag Queen Storytime for children in defense of the First Amendment of the United States Constitution. If there is any damage to anybody on any side on October 27, 2018, Plaintiff Sevier and others will blame Judge Rosenthal's lack of responsiveness that has zero basis for the damage and ask that oversight hold her accountable. Perhaps Judge Rosenthal has been on the bench so long that she has become jaded and brainwashed by the unexamined assumption of the superiority of our cultural moment. But her indifference to the safety, health, and welfare of children and her disregard of the Constitution is hateful. A memorandum of law in support of this motion is attached. The memorandum will help Judge Rosenthal cure her false feeling that the Plaintiffs demands have "no basis." The only one without a basis her is Judge Rosenthal and the dishonest Mayor, who has the inability to tell the difference between right from wrong, real from fake, and secular from non-secular. It is certainly true that passions run high in this unresolved controversy, but the Court should be the one who is level headed and who follows the law and the evidence.

/s/Chris Sevier Esq./
DE FACTO ATTORNEY GENERALS
SPECIAL FORCES OF LIBERTY
ghostwarsmusic@gmail.com
BPR# 026577
1720 Bissonnet, Houston,
Texas 77005
(615) 500-4411
Bravo Three Zero



/s/Tex Christopher/
1720 Bissonnet, Houston,
Texas 77005 (832) 233-8879
Bravo Three Zero
(For will be represented by Eric Dick Esq.)

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this document and attached exhibits were mailed with adequate postage to the Defendants in this actions on October 24, 2018 to Mayor Sylvester Turner City of Houston P.O. Box 1562 Houston, TX 77251;; Defendant Lawson, 500 McKinney Street Houston, Texas 77002 (832) 393-1313

/s/Chris Sevier Esq./