United States District Court
Southern District of Texas
**ENTERED**
January 03, 2019
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| TEX CHRISTOPHER, *et al.*, | § |
| | § |
| Plaintiffs, | § |
| | § |
| VS. | § CIVIL ACTION NO. H-18-3943 |
| | § |
| | § |
| RHEA LAWSON, *et al.*, | § |
| | § |
| Defendants. | § |

## MEMORANDUM AND OPINION

In October 2018, Tex Christopher, Tracy Shannon, Pastor Calvin Miller, and Mark Christopher Sevier sued Rhea Lawson, in her official capacity as the Executive Director of the Houston Public Library, and Sylvester Turner, in his official capacity as the Mayor of Houston. The plaintiffs allege that "Drag Queen Storytime," a monthly event held at the Houston Public Library, violates the Establishment Clause of the First Amendment to the United States Constitution. (Docket Entry No. 1). Requesting temporary, preliminary, and permanent injunctive relief under 42 U.S.C. § 1983, the plaintiffs claim that the Library's partnership with "Drag Queen Storytime" unlawfully advances an alleged religion, "secular humanism." (*Id.* at ¶¶ 1–2, 5, 65–77).

In November 2018, Lawson and Turner moved to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction, and under Rule 12(b)(6) for failure to state a claim on which relief can be granted. (Docket Entry No. 48). The plaintiffs responded, the defendants replied, and the parties submitted supplemental briefs on constitutional standing. (Docket Entry Nos. 42, 43, 56, 59, 60).

Based on a careful review of the motion, response, reply, the parties' briefs, the record, and the applicable law, the court grants the motion and dismisses the complaint, without prejudice. (Docket Entry Nos. 1, 48). The reasons are detailed below.

**I.     Background**

The complaint alleges the following facts, accepted as true for the purpose of the defendants' motion to dismiss. The Library first advertised "Drag Queen Storytime" on its website in the summer of 2018:

> Drag Queen Storytime
> Library: Freed-Montrose Neighborhood Library
> Dates: 8/25/2018, 9/29/2018, 10/27/2018, 12/29/2018
> Room: Freed-Montrose Library Meeting Room
> Time: 2:00PM–2:45PM
> Type: Featured Event, Storytimes
> Age Group: appropriate for all ages.
> Share this: on Facebook and Twitter.
> Break out the dress up chest and let your imagination run wild as you join the Houston Public Library and local Drag Queens for Storytime. These vibrant Queens will help to instill a sense of love and acceptance in our children while encouraging them to be true to themselves.

(Docket Entry No. 1 at ¶ 22; Docket Entry No. 48 at 16).

The plaintiffs have religious objections to "drag queens," the Lesbian-Gay-Bisexual-Transgender-Questioning ("LGBTQ") community, and same-sex marriage. (*See* Docket Entry No. 1 at ¶¶ 5, 11, 47; Docket Entry No. 44 at ¶ 6 ("I find the . . . entertainers who will [read] at Drag Queen Storytime to be offensive.")). Asserting that "Drag Queen Storytime" "violate[s] community standards of decency," the plaintiffs "do not want themselves or their children to be exposed to the exhibition." (Docket Entry No. 9 at 13, 18). They complained to Library officials, demanding that the Library terminate "Drag Queen Storytime." (Docket Entry No. 1 at ¶ 12).

The Library issued a statement in response:

> Throughout their history, American public libraries have been on the front lines of promoting inclusivity and dispelling intolerance. The Houston Public Library is committed to celebrating the diverse and culturally rich communities here in Houston through a broad array of programs and resources we offer. All our programs are free, open to the public, and accessible by choice.

(*Id.* at ¶ 30).  The plaintiffs disagree, asserting that Library is "intolerant of anyone who [finds] homosexuality [to be] immoral." (*Id.*).

According to the complaint, the plaintiffs "pay and will continue to pay taxes of every kind in Harris County." (*Id.* at ¶ 55; *see id.* at ¶ 11; Docket Entry No. 44 at ¶ 5; Docket Entry No. 45 at ¶ 8; Docket Entry No. 46 at ¶ 5).  Pastor Miller and Christopher are Library members, and Sevier "secured a Library card for" a religious organization's "members to use." (Docket Entry No. 44 at ¶ 5; Docket Entry No. 45 at ¶ 8; Docket Entry No. 46 at ¶ 5).[1]  The plaintiffs "check out books" and "rent DVDs" from, and "pay for printing" services at, the Library, and they are "responsible for [Library] late fees." (*Id.*).  The plaintiffs "have residents [sic] in Houston," and they also rent commercial property in Texas.  (Docket Entry No. 1 at ¶ 11; Docket Entry No. 42 at 7–8).

The plaintiffs claim that the "Library is a public place," and that they have "encountered promotional materials" for "Drag Queen Storytime." (Docket Entry No. 44 at ¶¶ 4, 6; Docket Entry No. 45 at ¶¶ 6, 9; Docket Entry No. 46 at ¶¶ 4, 6).  The plaintiffs allege that the Library has used government funds to host, promote, and advertise "Drag Queen Storytime," and that the Library spent money to "special[ly] order" the books for the event. (Docket Entry No. 1 at ¶ 71).  "Drag Queen Storytime" is a nonsecular event, the plaintiffs assert, because the LGBTQ community is associated with an alleged religion, secular humanism. (*Id.* at ¶¶ 5, 12, 71).  The plaintiffs allege that Lawson has violated Library policies by advancing secular humanism over other religions, including Christianity, and that she has "regularly denied Christian groups—including ones that the [p]laintiffs are part of—to have Christian related events, even in designated public forums." (*Id.* at ¶ 29; Docket Entry No. 44 at ¶ 4; Docket Entry No. 45 at ¶ 7; Docket Entry No. 46 at ¶ 4).

---

[1] Plaintiff Tracy Shannon is no longer a party to this action.  She filed a notice of voluntary dismissal in October 2018.  (Docket Entry Nos. 36, 37).

3

In October 2018, after the Library hosted two sessions of "Drag Queen Storytime," the plaintiffs sued Lawson and Turner. (Docket Entry No. 1). They also applied for a temporary restraining order to enjoin the "Drag Queen Storytime" scheduled for October 27, 2018. (Docket Entry Nos. 3, 8). The plaintiffs argue that they are entitled to relief because hosting "Drag Queen Storytime" in the Library advances religion, and a particular religion, in violation of the Establishment Clause. (Docket Entry No. 1 at ¶ 71). The court denied the plaintiffs' application for temporary relief and Sevier's motion for recusal. (Docket Entry Nos. 3, 25, 38, 41). The plaintiffs then applied for additional temporary restraining orders, and the court ordered the parties to brief constitutional standing before ruling on those applications. (Docket Entry Nos. 29, 32, 34). Lawson and Turner moved to dismiss under Rules 12(b)(1) and 12(b)(6), the plaintiffs responded, and the defendants replied. (Docket Entry Nos. 48, 59, 60, 62).

The motion to dismiss and the parties' arguments are analyzed below.

## II.     The Legal Standards

### A.     Rule 12(b)(1)

Rule 12(b)(1) governs challenges to a court's subject-matter jurisdiction. "[A] claim is properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the claim." *In re FEMA Trailer Formaldehyde Prods. Liab. Litig. (Miss. Plaintiffs)*, 668 F.3d 281, 286 (5th Cir. 2012) (quotation omitted). "Courts may dismiss for lack of subject matter jurisdiction on any one of three different bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Clark v. Tarrant Cty., Tex.*, 798 F.2d 736, 741 (5th Cir. 1986) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)).

The plaintiff bears the burden of demonstrating that subject-matter jurisdiction exists. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). When examining a factual challenge to subject-matter jurisdiction under Rule 12(b)(1), which does not implicate the merits of the plaintiff's cause of action, the district court has substantial authority to "weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Williamson*, 645 F.2d at 413 (quotation omitted). "[A] motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle [the] plaintiff to relief." *Ramming*, 281 F.3d at 161 (citing *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998)).

**B.     Rule 12(b)(6)**

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550, U.S. at 556).

"To withstand a Rule 12(b)(6) motion, the complaint must allege 'more than labels and conclusions,'" and "a formulaic recitation of the elements of a cause of action will not do." *Norris v. Hearst Tr.*, 500 F.3d 454, 464 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557). "[A] complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Conversely, 'when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Id.* (alteration omitted) (quoting *Twombly*, 550 U.S. at 558).

## III. Analysis

### A. Subject-Matter Jurisdiction and Standing

#### 1. Traditional Standing Doctrine

"Federal courts have jurisdiction only over 'cases' or 'controversies.'" *Williams v. Parker*, 843 F.3d 617, 620 (5th Cir. 2016) (citing *Raines v. Byrd*, 521 U.S. 811, 818 (1997)). If a party lacks standing to sue, "[t]here is no case or controversy." *Id.* Because standing is necessary for subject-matter jurisdiction, it "is a threshold issue that [the court] consider[s] before examining the merits." *Id.* Three elements are required:

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e]

> result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (quotations and citations omitted).

"Plaintiffs always have the burden to establish standing." *Barber v. Bryant*, 860 F.3d 345, 352 (5th Cir. 2017) (citing *Lujan*, 504 U.S. at 561). They must meet this burden "'with the manner and degree of evidence required at the successive stages of the litigation,'" which means that "on a motion to dismiss, [they] must allege facts that give rise to a plausible claim of . . . standing." *Cornerstone Christian Schs. v. Univ. Interscholastic League*, 563 F.3d 127, 133–34 (5th Cir.2009) (quoting *Lujan*, 504 U.S. at 561). When a complaint seeks multiple kinds of relief, the plaintiff must show standing "for each type of relief sought." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (citing *City of L.A. v. Lyons*, 461 U.S. 95, 105 (1983)).

The plaintiffs argue that they have standing because they: have Library cards; have borrowed books from the Library; have used the Library's printing services; have attended meetings at the Library; have paid and continue to be responsible for Library late fees; have filed complaints with Library officials; and have been exposed to, and offended by, "Drag Queen Storytime" promotional materials. (Docket Entry No. 42 at 7–8; Docket Entry No. 43 at 15–16). Lawson and Turner respond that the plaintiffs do not have standing because they failed to "allege facts sufficient to show any injury in fact or any personal stake in the outcome of their challenge." (Docket Entry No. 56 at 3). The defendants argue that the plaintiffs did not claim that they were required to, or ever did, attend "Drag Queen Storytime." Instead, they "rely on imagined dire consequences to others," not "actual injury to themselves." (*Id.* at 5–6). The failure to allege particularized injury, Lawson and Turner contend, shows that the plaintiffs lack standing as a matter of law.

7

"In cases involving religious displays and exercises, [the Fifth Circuit] require[s] an encounter with the offending item or action to confer standing." *Barber*, 860 F.3d at 353 (citing *Doe v. Tangipahoa Par. Sch. Bd.*, 494 F.3d 494, 497 (5th Cir. 2007) (en banc)). In *Murray v. City of Austin, Tex.*, 947 F.2d 147, 150–51 (5th Cir. 1991), the plaintiff had standing to challenge Austin's "inclusion of a Christian cross in [its] insignia" because he personally received utility bills showing the cross symbol. *Id*. By contrast, in *Tangipahoa Parish*, the plaintiff lacked standing to challenge the reading of an invocation at school board meetings because there was no evidence that the plaintiff ever heard the prayer. *Tangipahoa Par.*, 494 F.3d at 497 (a showing that "mere abstract knowledge that invocations were said" did not confer standing).

As in *Tangipahoa Parish*, the complaint, the plaintiffs' briefs, and the plaintiffs' declarations do not allege facts showing that they attended "Drag Queen Storytime."² (*See* Docket Entry Nos. 1, 42, 43, 44, 45, 46). The plaintiffs assert the very opposite: they purposefully avoided "Drag Queen Storytime" because of its alleged immorality and potential to harm their children. (*See* Docket Entry No. 44 at ¶ 6). Instead of witnessing the event, the plaintiffs "researched [it] online." (*Id.*; Docket Entry No. 45 at ¶ 9; Docket Entry No. 46 at ¶ 6; *see* Docket Entry No. 43 at 13 ("Plaintiffs here do not want to come into . . . contact with the exhibition[].")). While the complaint alleges that the plaintiffs regularly use the Library and have encountered some "Drag Queen Storytime" promotional materials, those facts fail to establish standing because "[t]here must be

---

² In the plaintiffs' response to the defendants' motion to dismiss, the plaintiffs argue that they "attend[ed 'Drag Queen Storytime'] on October 27, 2018." (Docket Entry No. 59 at 18 n.21). The response is contradictory because it also states that "[t]he plaintiffs had . . . experienced ['Drag Queen Storytime'] prior to this suit in view of the fact that they encountered fliers," and "Sevier . . . couldn't really experience the event first-hand." (*Id.*). It is unclear whether the plaintiffs encountered "Drag Queen Storytime" on October 27, or, if they attended the event, whether the encounter was "in the course of [their] regular activities." *Barber*, 860 F.3d at 354 ("The personal confrontation . . . cannot be manufactured for the purpose of litigation.").

8

'proof in the record that [the plaintiffs] were exposed to" the actual event.  *Barber*, 860 F.3d at 354 (quoting *Tangipahoa Par.*, 494 F.3d at 497); *see also Soc'y of Separationists, Inc. v. Herman*, 959 F.2d 1283, 1288 (5th Cir. 1992).  No proof of confrontation is in this record.[3]  *Id.* at 353.  The court finds that they did not suffer an injury and, as a matter of law, lack standing to challenge the event.

The plaintiffs also fail to establish standing for the separate reason that the injuries they allege are not traceable to the defendants' conduct.  *Lujan*, 504 U.S. at 560–61.  Nor is it likely that their "injur[ies] will be redressed by a favorable decision."  *Id.*  The plaintiffs' filings show that they object not just to "Drag Queen Storytime," but to same-sex marriage and public demonstrations by the LGBTQ community.  (*See* Docket Entry No. 1 at ¶ 5 n.11; Docket Entry No. 44 at 3; Docket Entry No. 59 at 8 n.4).  These objections are not tethered to Lawson's or Turner's actions, and an order enjoining "Drag Queen Storytime" presentations will not redress them.  The plaintiffs are using this case—and similar cases filed in other jurisdictions—to protest the gay-rights movement and the legal rights federal courts have recognized for members of the LGBTQ community.  *See Guidry v. Elberson*, No. 6:18-CV-1232-RRS-PJH (W.D. La. 2018); *Sevier v. Thompson*, No. 2:16-CV-659-DN-ENJF, 2018 WL 1384475, at *1 (D. Utah Mar. 16, 2018); *Sevier v. Bevin*, No. 16-80-HRW, 2016 WL 1217162, at *2 (E.D. Ky. Mar. 31, 2017); *Sevier v. Abbott*, No. H-16-347 (S.D. Tex. May 13, 2016).  The plaintiffs also allege that they have been "libeled, harassed, targeted, and ostracized online and in person because [they] have spoken out publicly [that] homosexual orthodoxy is a religion."  (Docket Entry No. 44 at ¶ 3; Docket Entry No. 45 at ¶ 5; Docket Entry No.

---

[3] Relying on *Staley v. Harris Cty., Tex.*, 332 F. Supp. 2d 1030, 1034 (S.D. Tex. 2004), the plaintiffs argue that "the threat of unwelcomed and continued contact is sufficient to meet the 'injury in fact' requirement" for standing.  (Docket Entry No. 43 at 13).  *Staley* is distinguishable because the plaintiff in that case, unlike the plaintiffs here, had standing because she "passe[d] by the monument [at issue] going to and from the Courthouse in the course of her profession."  *Staley*, 332 F. Supp. 2d at 1034.  The plaintiffs have not alleged similar facts.  They did not allege, for example, that they saw the actual event while using the Library.

46 at ¶ 3). The plaintiffs lack standing because, as the defendants correctly argue, "[e]liminating ['Drag Queen Storytime'] will not cure their perceived feelings of persecution." (Docket Entry No. 56 at 12).

### 2. Taxpayer Standing

Standing, "[a]bsent special circumstances, . . . cannot be based on a plaintiff's mere status as a taxpayer." *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 134 (2011) ("This Court has rejected the general proposition that an individual who has paid taxes has a [legal] interest in ensuring that those funds are not used by the Government in a way that violates the Constitution." (quotation omitted)). "[T]o establish state or municipal taxpayer standing to challenge an Establishment Clause violation," a plaintiff must show not only that he or she pays taxes to the relevant entity, but must also show that "tax revenues are expended on the disputed practice." *Doe v. Duncanville Indep. Sch. Dist.*, 70 F.3d 402, 408 (5th Cir. 1995) (citing *Gonzales v. N. Twp. of Lake Cty., Ind.*, 4 F.3d 1412, 1415–16 (7th Cir. 1993)). The plaintiff must be a resident taxpayer, not just a party who pays some tax to the municipality at issue. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 349 (2006); *Frothingham v. Mellon*, 262 U.S. 447, 486 (1923); *Ehm v. San Antonio City Council*, 269 F. App'x 375, 377 (5th Cir. 2008). And the expenditure of government funds must be more than de minimis. *See Doremus v. Bd. of Ed. of Borough of Hawthorne*, 342 U.S. 429, 433–34 (1952); *Henderson v. Stalder*, 287 F.3d 374, 381 (5th Cir. 2002); *Nichols v. City of Rehoboth Beach*, 836 F.3d 275, 281 (3rd Cir. 2016) ("Plaintiffs must establish more than a potential de minimis drain on tax revenues to the [allegedly unconstitutional conduct]." (quotation omitted)).

The plaintiffs argue that they have taxpayer standing because: they have paid sales taxes in Houston "through their use of the Library"; they have "residences . . . in the State of Texas and [in]

10

Harris County";[4] they are Library members; "the Library special ordered [the books read at 'Drag Queen Storytime'] with taxpayer dollars; the Library "promoted the event on its website and other websites that are financed with tax funds"; and "the Library used taxpayer dollars to create a special flyer" for the event. (Docket Entry No. 1 at ¶ 12; Docket Entry No. 42 at 7–9; Docket Entry No. 43 at 15–16). Lawson and Turner respond that "Library cards, sales taxes, rent, and . . . other non-property tax payment are insufficient bases for municipal taxpayer standing." (Docket Entry No. 56 at 8). The defendants contend that even if the plaintiffs are resident taxpayers, they fail to allege facts showing that the Library spent more than a de minimis amount on "Drag Queen Storytime." (*Id.* at 9).

The plaintiffs fail to allege facts that could meet either the resident-taxpayer or expenditure prongs of taxpayer standing. Municipal taxpayers have standing to challenge unconstitutional uses of government funds because of "the peculiar relation of the corporate taxpayer to the corporation." *Cuno*, 547 U.S. at 349 (quotation omitted). While the complaint alleges that the plaintiffs "have residences, pay, and continue to pay all types of taxes in the State of Texas and to Harris County, (Docket Entry No. 1 at ¶ 12), it does not allege that they are Houston residents or other facts showing "the peculiar relation of the corporate taxpayer to the corporation," *Cuno*, 547 U.S. at 349 (quotation omitted). As the defendants correctly observe, "[n]either the State of Texas nor Harris

---

[4] The complaint alleges the following facts concerning the plaintiffs' connection to Houston: "[t]he Plaintiffs are taxpayers in Texas"; "[t]hey all have residents [sic] in Houston and have continuously paid taxes here"; "[t]he Plaintiffs have residences, pay, and continue to pay all types of taxes in the State of Texas and to Harris County"; and "[t]he Plaintiffs or their members are . . . residents of Harris County or they do substantial work there"; (Docket Entry No. 1 at ¶¶ 11, 12, 55). Pastor Miller's standing brief asserts that "[t]he plaintiffs pay sales tax through their use of the Library and in the city where the Library is located." (Docket Entry No. 43 at 16). Sevier's standing brief states that "the Plaintiffs have residence [sic] near the Library and commercial leases [sic]." (Docket Entry No. 42 at 7–8). The plaintiffs' response to the defendants' motion to dismiss argues that the plaintiffs "rent or own property in Houston[,] causing them to pay property tax." (Docket Entry No. 59 at 17 n.20).

11

County is a relevant entity for the purposes of taxpayer status." (Docket Entry No. 56 at 8); *Duncanville Indep. Sch. Dist.*, 70 F.3d at 408.

Even if the complaint alleged that the plaintiffs are resident taxpayers, it fails to allege facts that could show that the Library expended more than a de minimis amount of taxpayer dollars on "Drag Queen Storytime." The plaintiffs argue that they have taxpayer standing because the Library spent funds to "special[ly] order[]" books and to advertise the event by posting on the Library website and creating a flyer. (Docket Entry No 42 at 8). They explain that it "is the totality of these expenditures that are 'significant,' not 'de minimis.'" (Docket Entry No. 59 at 19 n.24).

In *Doremus*, 342 U.S. at 433, the Supreme Court held that the plaintiffs did not have standing to challenge a state law requiring Bible reading in public schools because "there [was] no allegation that [the reading] is supported by any separate tax or paid for from any particular appropriation or that it adds ay sum whatever to the cost of conducting the school." *Id.* The plaintiffs failed to allege "that the Bible reading increases any tax they do pay or that as taxpayers they are, will, or possibly can be out of pocket because of it." *Id.* "[T]he grievance [was] not a direct dollars-and-cents injury but . . . a religious difference." *Id.* at 434.

In *Henderson v. Stalder*, 287 F.3d at 376, Louisiana taxpayers challenged a state statute "authoriz[ing] a prestige license plate bearing a [certain] message." *Id.* The plaintiffs "allege[d] injury in the form of the use of their state income tax dollars to manufacture and distribute the . . . license plate." *Id.* at 379. The Fifth Circuit held that they lacked taxpayer standing because the "allegation [did] not show that the . . . plaintiffs have sustained or will sustain a direct pecuniary injury, i.e. an injury in fact, because of the manufacture or distribution of the . . . license plate." *Id.* The plaintiffs did not allege that the prestige plates "cost more for the State" than ordinary plates; the State required drivers who chose the prestige plates to pay a fee to offset its costs; and the

plaintiffs failed to allege "that the amount they pay to the State in the form of income taxes will increase because of the enactment." *Id.*

Here, as in *Doremus* and *Stalder*, the plaintiffs do not allege a financial injury or "a measurable appropriation" of funds. *Doremus*, 342 U.S at 434; *see Stalder*, 287 F.3d at 379. The parties agree that the Library's annual budget is approximately $40,000,000. (Docket Entry No. 56 at 11; Docket Entry No. 63-1 at 2). Posting the advertisement described in the complaint—which includes a few lines of text posted to an existing website—is a de minimis expense. (Docket Entry No. 1 at ¶ 22). The plaintiffs do not claim that it cost any money or any measurable amount of time to add the listing to the Library's calendar. They assert only that the posting is an expense that gives rise to standing. The plaintiffs allege the purchase of children's books and creation of a flyer but fail to allege that either were "a measurable appropriation" of the Library's $40,000,000 budget, or both cost more than a de minimis amount. *Doremus*, 342 U.S at 434. These costs, individually or in the aggregate, do not confer standing.

Even accepting the plaintiffs' assertion that the expended funds were "significant," the complaint still fails to allege an injury because it does not claim that "the amount the [plaintiffs] pay to [Houston] in the form of [sales] taxes will increase because of the" event, the books, flyer, or online posting. *Stalder*, 287 F.3d at 379. As in *Doremus*, this lawsuit is "not a direct dollars-and-cents injury," but the plaintiffs' disagreement with the Library's partnership with individuals allegedly associated with the LGBTQ community. *Doremus*, 342 U.S. at 434.

Because the plaintiffs fail to satisfy traditional or taxpayer standing, the court lacks subject-matter jurisdiction. The defendants' motion to dismiss under Rule 12(b)(1), (Docket Entry No. 48), is granted. The complaint, (Docket Entry No. 1), is dismissed, without prejudice.

**B.     The Motion to Dismiss for Failure to State a Claim**

Even if the court had jurisdiction, the complaint fails to state a claim for relief under § 1983. The Establishment Clause of the First Amendment provides that "Congress shall make no law respecting an establishment of religion." U.S. CONST. amend. 1. The Clause applies to the states through the Fourteenth Amendment. *See Wallace v. Jaffree*, 472 U.S. 38, 42 n.10 (1985) (citing *Everson v. Bd. of Ed.*, 330 U.S. 1, 15–16 (1947)). "The touchstone for [Establishment Clause] analysis is the principle that the 'First Amendment mandates governmental neutrality between religion and religion, and between religion and nonreligion.'" *McCreary Cty., Ky. v. ACLU*, 545 U.S. 844, 860 (2005) (quoting *Epperson v. Arkansas*, 393 U.S. 97, 104 (1968)).

Under *Lemon v. Kurtzman*, 403 U.S. 602, 612–13 (1971), government action will survive an Establishment Clause challenge if: (1) it has a secular purpose; (2) its primary effect neither advances nor inhibits religion; and (3) it does not foster an excessive government entanglement with religion. *Id.* If any of the three elements is absent, the government action violates the Establishment Clause. *See Comer v. Scott*, 610 F.3d 929, 934 (5th Cir. 2010). The Fifth Circuit applies the *Lemon* test in Establishment Clause cases. *See, e.g.*, *id.*; *Croft v. Perry*, 562 F.3d 735, 742 (5th Cir. 2009); *Smith v. Thaler*, 526 F. App'x 395, 407 (5th Cir. 2013).

The plaintiffs claim that "Drag Queen Storytime" violates the Establishment Clause because: the Library, a municipal entity, hosts the event; readers are "drag queens," who are commonly associated with the LGBTQ community; and the LGBTQ community adheres to secular humanism, an alleged religion. (*See* Docket Entry No. 1 at ¶¶ 65–77; Docket Entry No. 4 at 18 n.17, 21–29; Docket Entry No. 59 at 20). The defendants argue that the plaintiffs fail to state a claim because they do not "show that ['Drag Queen Storytime'] is an activity that invokes the Establishment

14

Clause." (Docket Entry No. 48 at 14; Docket Entry No. 56 at 13). Lawson and Turner contend that "'non-secular [h]umanism' is a label [that the p]laintiffs seek to impose on ['Drag Queen Storytime'] without any facts showing this event advances religion." (*Id.*). According to the defendants, "[t]he core of [the p]laintiffs' argument is that identifying as LGBTQ is a religion or equates to a religious affiliation with '[s]ecular [h]umanism,'" which, Lawson and Turner contend, "has no basis in law or fact." (Docket Entry No. 48 at 15; Docket Entry No. 56 at 14).

"[B]efore the *Lemon* test can be applied, [the court] must first determine whether there is even an issue of establishment of religion." *Fleischfresser v. Dirs. of Sch. Dist. 200*, 15 F.3d 680, 687 (7th Cir. 1994) (citing *Gonzales*, 4 F.3d at 1417). The plaintiffs "raise a constitutional claim only if ['Drag Queen Storytime'] establishes a *religion*." *Id.* (emphasis in original). "The Supreme Court long has recognized that determining whether a belief or practice is 'religious' is a 'difficult and delicate task.'" *A.A. ex rel. Betenbaugh v. Needville Indep. Sch. Dist.*, 701 F. Supp. 2d 863, 872 (S.D. Tex. 2009) (quoting *Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 712 (1981)). "[N]either the Supreme Court nor the Fifth Circuit has set forth a precise standard for distinguishing the religious belief from the secular choice." *Id.* (citing *Theriault v. Carlson*, 495 F.2d 390, 394 n.6 (5th Cir. 1974).

According to the plaintiffs, a "religion" under the First Amendment "deal[s] with issues of 'ultimate concern' that . . . occupy a 'place parallel to that filled by God in traditionally religious persons.'" (Docket Entry No. 59 at 8 (quoting *Fleischfresser*, 15 F.3d at 688 n.5). Relying on *Torcaso v. Watkins*, 367 U.S. 488, 495 n.11 (1961), the plaintiffs contend that the Supreme Court has recognized secular humanism as a religion for Establishment Clause purposes. (*See* Docket Entry No. 59 at 8). The LGBTQ community and "Drag Queen Storytime" readers subscribe to secular humanism, the plaintiffs argue, because "being a member of the LGBTQ . . . community

goes . . . into the realm of semi-religious identity narratives that are a commentary on truth." (*Id.* at 7).

In *Fleischfresser*, 15 F.3d at 683, an elementary school used a supplemental reading program to educate students. *Id.* Offended by some of the material, a group of parents sued the school district, arguing that the series "'foster[ed] a religious belief in the existence of superior beings exercising power over human beings by imposing rules of conduct, with the promise and threat of future rewards and punishments,' and focuse[d] on supernatural beings including 'wizards, sorcerers, giants, and unspecified creatures with supernatural powers.'" *Id.* The parents claimed that "the series 'indoctrinate[d] children in values directly opposed to their Christian beliefs.'" *Id.* The publisher responded that the series was "to stimulate a child's senses, imagination, intellect, and emotions[,] the best way to build reading skills." *Id.* at 688. The Seventh Circuit rejected the parents' argument that use of the series was the practice of "religion" under the Establishment Clause. Acknowledging that the parents were offended by certain stories, the court found that they "insist that the reading series presents religious concepts, found in branches of witchcraft and satanism; this hardly sounds like the establishment of a coherent religion." *Id.* at 687.

Here, the plaintiffs argue that "Drag Queen Storytime" is a religious event because of an alleged connection between "Drag Queen Storytime," the LGBTQ community, and secular humanism. As in *Fleischfresser*, they fail to raise a constitutional claim because, even accepting that secular humanism could be a religion for Establishment Clause purposes, the plaintiffs fail to allege any facts or basis showing that "Drag Queen Storytime" is a religious activity. There is no allegation that a reader discussed secular humanism at the event, or that any story the Library selected invoked secular humanism or any religion at all. The plaintiffs instead make only conclusory statements associating secular humanism with the event. The statements are not entitled

to be taken as true. *Iqbal*, 556 U.S. at 679. The plaintiffs claim, for example, that "[a]ll religion amounts to a set of unproven answers to the greater questions like 'why are we here' . . . . The LGBTQ ideology that will be sermonized at ["Drag Queen Storytime"] attempts to answer those questions in a manner that makes the event . . . non-secular." (Docket Entry No. 1 at ¶ 69). The plaintiffs also assert that "Drag Queen Storytime" "has nothing to do with 'diversity' and 'tolerance' but with brainwashing the children of Houston to a religious worldview." (*Id.* at ¶ 12). The complaint alleges no facts supporting these conclusory statements. Because the plaintiffs do not allege facts that do or could show that the event is a religious activity, there is no issue of establishment of religion, and the complaint fails to state a claim for relief under § 1983. *Fleischfresser*, 15 F.3d at 687.

The defendants have invoked qualified immunity. (Docket Entry No. 48 at 17). Because the complaint does not state a claim, "an analysis of . . . qualified immunity is unnecessary." *Goodman v. Harris Cty.*, 571 F.3d 388, 396 (5th Cir. 2009) ("Qualified immunity is only applicable as a protective shield once a plaintiff has made out a claim against an official acting in his individual capacity.").

**IV.     Conclusion**

The court lacks subject-matter jurisdiction because the plaintiffs fail to establish standing. Even if the court had jurisdiction, the complaint fails to state an Establishment Clause claim. The defendants' motion to dismiss, (Docket Entry No. 48), is granted under Rules 12(b)(1) and 12(b)(6). The complaint, (Docket Entry No. 1), is dismissed, without prejudice, for lack of jurisdiction, while noting that the pleading deficiencies under Rule 12(b)(6) could not be cured by amendment, so dismissal on this basis would be with prejudice. The plaintiffs' motions for reconsideration,

temporary relief, to stay, and to compel, (Docket Entry Nos. 27, 29, 32, 63), are denied.  Dismissal is separately entered.

        SIGNED on January 3, 2019, at Houston, Texas.

                              Lee H. Rosenthal
                            Chief United States District Judge